235 So.2d 87

Frank BARRECA

v.

CITY OF NEW ORLEANS.

No. 50048.

May 4, 1970.

Joseph Barreca, Garon & Brener, Milton E. Brener, Herbert J. Garon, New Orleans, for plaintiff-appellant.

Duke & Porterie, Hooper & Schmidt, New Orleans, Alvin J. Liska, City Atty., Ernest L. Salatich, Asst. City Atty., for defendant-appellee.

McCALEB, Justice.

Frank Barreca instituted the instant action against the City of New Orleans, the French Market Corporation, Felix Bonura, President of said corporation, and H. N. Fernandez, Inc. (hereafter called Fernandez). In it he seeks both a preliminary and a permanent injunction prohibiting all defendants from continued operation of the coffee stand at 401 St. Ann Street in New Orleans and further occupancy of the premises by Fernandez; additionally, he prays for a mandamus directed to Bonura, as President and Chairman of the Board of Directors of the French Market Corporation, ordering him to enter into a lease of the St. Ann Street property on the terms, conditions and specifications of a bid submitted by him on March 6, 1968 to the French Market Corporation for the operation of the establishment as a coffee house, he alleging that his was the highest bid submitted under an invitation by that body to bid for the lease.

Fernandez and the City filed exceptions of no right or cause of action which, apparently, were referred to the merits. All defendants answered praying that the suit be dismissed.

When the case was tried on the rule for a preliminary injunction, it was stipulated by the parties that the evidence offered then would be the same as that on the merits of the permanent injunction, and that the two would be tried together.

Following a hearing the trial court maintained the exception of no right or cause of action filed by the City; further, it dismissed plaintiff's suit against Fernandez and the French Market Corporation on the merits. The judgment was affirmed on appeal. La.App., 224 So.2d 138. We granted certiorari at the instance of the plaintiff.

The following recitation sets forth the background out of which this litigation arose. It is virtually undisputed.

Through a series of ordinances enacted in 1943 (which are not pertinent to the issues presented here), the French Market Corporation (hereafter call the Corporation) became the agent for the City of New Orleans in leasing and otherwise

managing the French Market property belonging to the City, which included the coffee stand involved herein. It has acted as agent since that time.

Since 1942 the members of the Fernandez family have occupied the premises at 401 St. Ann Street as lessees of the City and have operated a coffee shop there under the name of "Cafe Du Monde Coffee Stand". (In later years they have incorporated as H. N. Fernandez, Inc.) The use of the name "Cafe Du Monde Coffee Stand" belongs to Fernandez. As we appreciate the evidence, the occupancy was under a series of short term leases, each for less than one year's duration.

On July 6, 1967 the Commission Council of the City (hereafter referred to as the City Council) adopted a resolution proposing to the Corporation that it seek to obtain long term leases for this and another French Market coffee shop either by negotiated leases based on competent appraisals, or by public bidding.

As a result of this resolution the Corporation sought and obtained an appraisal from the New Orleans Real Estate Board which suggested a monthly rental for the St. Ann Street property of $1,200 per month or 6% of the gross revenues of the business, whichever was higher.[1]

The Corporation then, by way of public advertisement, invited lease negotiations for the property. Only Fernandez submitted a written proposal. A lease was agreed upon by the Corporation with Fernandez for a rental in the sum suggested by the Real Estate Board and was presented to the Council for its approval and acceptance. It was not approved by the Council.[2] Thereafter, the Corporation publicly advertised for bids, in response to which they received four bids.

The offering of each bid was for a five year lease with a five-year renewal option; the proposed rental was given in a fixed amount or on a percentage of the gross receipts, whichever was higher. The bids on an annual basis were as follows: Fernandez: $24,000 or 6%; Barreca (plaintiff): $35,000 or 13½% for the first five years, and $40,000 or 13½% for the second five years; Anthony Angello: $40,000 or 12% for the first five years, and $40,000 or 13% for the second five years; and a partnership of E. C. Tzavellas and Joseph C. Keith: $24,000 or 6% for the first five

1. We have been unable to determine from the record whether the figure represented the Real Estate Board's estimate of the fair and reasonable market value or a minimum rental value. However, we do not consider the question important to this litigation, because as will be hereafter shown, all bids received were in excess of the suggested rental.

2. The record is not clear whether the Council formally rejected the lease or whether it merely failed to approve and accept it.

years, and $27,000 or 6% for the second five years.[3]

After considering the bids the Corporation accepted that of Fernandez which it submitted to the Council. On May 9, 1968 that body declined to accept the proposed lease. Nothing further was done by either the Council or the Corporation with regard to long-term leasing but, by virtue of a resolution adopted by the Corporation on July 12, 1967 wherein the Corporation had declared that it would continue its existing leases on a month-to-month basis until new leases were perfected, Fernandez has occupied the premises on a month-to-month arrangement.[4]

The instant suit was filed May 13, 1968. It is founded primarily on the provisions of Ordinance No. 2500 of the Mayor Council Series of the City of New Orleans, enacted in 1962, as amended in 1964 by Ordinance No. 2870, Mayor Council Series.

The pertinent portions of the ordinance, as amended, read as follows:

"AN ORDINANCE providing that no lease of property belonging to the City of New Orleans for a period of more than one (1) year shall be entered into unless the same has been awarded to the highest responsible bidder after due advertisement by the Bureau of Purchasing of the Department of Finance.

"SECTION 1. That, on and after the effective date of this ordinance, no lease of property belonging to the City of New Orleans for a period of more than one (1) year shall be entered into unless the same has been awarded to the highest responsible bidder, after due advertisement and evaluation of bids received by the Bureau of Purchasing of the Department of Finance and after approval by the Council.

\*　　\*　　\*　　\*　　\*　　\*

"SECTION 3. That any lease of property belonging to the City entered into in violation hereof shall be invalid and unenforceable against the City.

"SECTION 4. That the Council, by a majority vote, may authorize leasing of property in a manner other than prescribed herein."

---

3. It would thus appear that plaintiff was not the highest bidder as alleged by him in his petition, and this was one of the bases for Fernandez' exception. It is true that the Angelo bid was subsequently withdrawn. But this occurred after the filing of this suit (only five days after the rejection of the Fernandez bid by the Council) which had the effect of hereafter tying the matter up in the courts. But for the filing of this suit, it is possible that the Corporation and the Council might have given further consideration to the Angello bid. But, be that as it may, we pretermit the question of the effect of the Angello bid inasmuch as our conclusion on the other issues involved result in a dismissal of plaintiff's suit.

4. The record does not so reflect but it is our understanding from the oral argument here that there has been a substantial increase in the rental being paid over that being paid at the time of the adoption of the July 12, 1967 resolution.

The principal argument advanced by plaintiff throughout this litigation is that the advertisement for bids for leasing the property was conducted pursuant to the provisions of Section 1 of the ordinance and that, inasmuch as he was the highest responsible bidder, he has a right to be awarded a lease in accordance with his bid. Thus, he states in his brief to the district court.

"* * * The only issue before the Court now is whether or not in the first instance the corporation is obliged to enter into a lease with Barreca as the highest responsible bidder.

* * * * * *

"We must yet return to the proposition that the contract must be awarded to the highest responsible bidder and that

having been found to be responsible, Frank Barreca is entitled of right to be awarded the contract. The only discretion vested in the Board is whether or not Barreca is responsible. This has been determined favorably to him and any other criteria created by the Board to determine the successful bidder is of no moment. Neither their determination that the bid is not 'realistic' nor their determination that Fernandez is the 'most responsible' bidder, is of any significance."

Alternatively, he argues that having advertised publicly for bids, the Corporation was obliged to proceed in good faith and to let the lease to the highest responsible bidder and that its failure to do so was arbitrary and carpricious and constituted an abuse of its discretion.[5]

5. We granted the writ in this case not because we were convinced of the merits of these claims of the plaintiff. When we considered plaintiff's application, we were of the view that the opinion and judgment of the Court of Appeal might be construed as holding that a party aggrieved by arbitrary and capricious action of a public body with regard to awarding contracts, after publicly advertising for and receiving bids therefor, had no standing in a court of law to redress any wrong resulting from such action by the public body. Consequently, we granted the writ because we did not want to go on record as appearing to approve such holding. Incidentally, we observe that the opinion and holding of the court is undoubtedly the result of the plaintiff's pleading. As we noted originally herein, the only relief sought against the City was to enjoin it from operating a coffee shop at the location involved, and from permitting Fernandez from operating there. Clearly plaintiff has no basis for preventing the operation of a coffee stand; nor is he entitled to complain of Fernandez' occupancy, insofar as the City is concerned, unless he himself is entitled to such occupancy. The City is the principal in the transaction, the Corporation being merely its agent. And mandamus was not sought to compel it or order its agent to submit the bid, or to consider it ex proprio motu. Indeed, in a supplemental brief filed in this Court, following oral argument of the case, plaintiff asserts: "Relator confesses a reluctance to have asked heretofore for relief against the City of New Orleans, for we, in truth, have no complaint against the City or any agency of the City except the French

We do not agree with plaintiff that the action of the Corporation or that of the City Council was governed by the provisions of Section 1 of Ordinance 2500. The resolution of the Council of July 6, 1967 makes it manifest that it intended that the Corporation proceed to obtain long term leases in a manner *other* than as prescribed by Section 1, such action being clearly authorized by Section 4. For instance, one of the methods suggested for leasing was by negotiation which clearly would not be proper under Section 1. Furthermore, the resolution requested that the *Corporation* advertise (or negotiate) for bids. Had the Council's intention been to proceed under Section 1, the request to conduct such advertising would have been directed to the Bureau of Purchasing of the Department of Finance, the latter agency being charged under the provisions of Section 1 with the duty of performing such function.

Nor were the bidders misled in any way, because the invitation to bid did not purport to be made in conformity with Section 1 nor did the language thereof suggest that the lease would be awarded to the highest bidder. To the contrary, Section 12 of the proposal specifically provided that:

"The right is reserved by the FRENCH MARKET CORP. to waive

Market Board, (to the extent that the Board can be considered a City Agency)." Thus, he virtually concedes that the judg-

any irregularities in any proposal, to reject any or all proposals, to negotiate for the modification of any proposal with mutual consent of the applicant, to readvertise for proposals if desired, and to accept the proposal which, *in the judgment of the CORPORATION does not offer the highest annual guarantee of direct financial return, but is nevertheless deemed the most advantageous* for the public and the City of New Orleans, it being the intention of the FRENCH MARKET CORPORATION to have any proposal that it feels should be accepted *but which is not the highest bid* approved by the New Orleans City Council in accordance with law." (italics ours)

Again, Section 15 contained the equally unambiguous declaration that:

"In awarding a contract for any one of the coffee houses in the FRENCH MARKET, the CORPORATION must assure itself that the concessionaire will provide the public with Coffee and Doughnuts of the highest quality. * * *

"The CORPORATION reserves the right to investigate thoroughly the financial status, experience and record of each applicant, and the final award will be based upon the comparative qualities above mentioned, as well as the minimum

ment dismissing the suit against the City was correct

annual guarantee quoted to the applicant's proposal."

▇ Inasmuch as neither the invitation to bid nor the law under which the bids were sought required that the highest responsible bid be accepted, we have concluded that plaintiff acquired no absolute or vested right to compel acceptance of his bid.

Conceding arguendo, as argued by plaintiff in his application for a writ of this Court, that " * * * the Board did advertise, and having done so, there is at least some elemental obligation on the part of the Board, particularly as representative of the City of New Orleans, to deal fairly with bidders" and that he " * * * had a right to assume, that if he met with all qualifications and was found to be a 'responsible' bidder, that he would at least be fairly considered * * * ", we nevertheless do not find any merit in his alternative claim that the action of the Corporation in not recommending his bid to the City Council for acceptance was arbitrary and capricious.

The record before us, including the provisions of the proposed leases, manifests the awareness of the officers of the Corporation to the importance to the City and its citizens of the continued operation and proper functioning of the French Market coffee stands. Their concern in leasing this particular property is not limited to receiving as high a return as possible in rentals, as is most often the principal concern in leasing operations, albeit this is an important factor. Also of prime importance, however, is that the coffee shops continue to be operated without interruption on a high standard and in a manner satisfactory and pleasing to its citizens and the touring public.

Some of the circumstances which we think were properly considered by the Corporation in reaching its decision to accept the Fernandez bid are set out thusly in the Court of Appeal opinion:

"* * * the goodwill which has made this coffee house an outstanding attraction to both tourists and New Orleaneans, was created by the arduous efforts of H. N. Fernandez, Inc., over a period of thirty years; that the business relationship which this tenant has always been reputable, pleasant and profitable; that the business records of this tenant indicate that its bid is more realistic than the higher bids * * *. Additionally it reasoned that the title, 'Cafe Du Monde Coffee Stand', which the Fernandez family has used as a trade name for more than thirty years, would be moved to another location, and this action would obviously jeopardize the coffee house business and ultimately affect the interest of the City of New Orleans and particularly the other businesses in the vicinity of the coffee house."

It is also to be observed that the rental offered by Fernandez is considerably in excess of the amount suggested by the Real Estate Board. Of importance, too, is the fact that the bidders were not bidding merely on leasing an empty building. In effect, under the circumstances existing here, also involved was the lease of a "going concern" included in which was the good will and reputation built up over many years by the competent and conscientious management of Fernandez. The Corporation, we think, was justified in setting off this element to some extent, in favor of Fernandez as against a bid for higher rent.

We deem is unnecessary to recite the figures involved, but we are of the opinion that the record amply supports the "unrealistic" nature of plaintiff's bid when considered in connection with past gross revenues of the coffee stand and its operational costs, and the likelihood that the income cannot be rapidly increased appreciably because of the controlled prices set by the lease.

Also before the Corporation was the financial statement of plaintiff's operation during 1967 of a restaurant in the uptown section of New Orleans. (It was attached to his bid.) The gross revenues of the business from sales was $187,252.76. ("Other income" was $5,775.86.) He showed a net profit before income taxes of $407.52. The record reveals that plaintiff had previously pleaded guilty to two criminal charges. Without detailing them, we observe only that the nature of the charges was such as might reflect unfavorably on the probability of his continuing the operation of the St. Ann Street address in the manner desired by the Corporation and the City Council.[6]

■ Under these circumstances, we cannot say that the Corporation acted arbitrarily in preferring the bid of Fernandez to that of the plaintiff, even though the latter would have yielded a higher return in rentals.

For the reasons assigned, the judgment dismissing plaintiff's suit as to all parties is affirmed, all costs to be borne by plaintiff.

SANDERS, J., did not participate.

SUMMERS, J., concurs in the result.

BARHAM, Justice (concurring in the result.)

While I agree with the result reached by the majority, I reject the reasoning and the considerable dicta in its opinion.

6. We have noted, as has been called also to our attention in a supplemental brief filed by plaintiff, that these convictions occurred some years ago. Nevertheless, although not a determining factor, they can be considered in the overall background of a bidder in a determination of who shall be awarded the bid.

The Court of Appeal correctly set forth the factual background necessary for determination of the issues before us. 224 So.2d 138. The French Market Corporation obtained a lease of the French Market properties from the City of New Oreleans and executed a sublease of the properties to the City of New Orleans, retaining the management and operation of them. Ordinance No. 15,701 C.C.S., which authorized the lease to the French Market Corporation and was made a part of that lease, specifically provided that the French Market Corporation could sublease the French Market properties only with the approval of the city. In fact, the sublease from the corporation to the city contained the approval of the city for the corporation to execute that sublease. Either one of two propositions must prevail. Since the corporation has sublet the French Market properties to the City of New Orleans and retained unto itself only the management and operation of the properties and the collection of rentals, the only party which can further sublease French Market properties would be the City of New Orleans. However, if it be argued that the French Market Corporation, although it has sublet the properties, may initiate activities for subleasing particular pieces of property, the corporation would still be confronted with the necessity of obtaining approval from the city. Therefore, under any analysis of the arrangement between the City of New Orleans and

the French Market Corporation, it is the city through its duly elected mayor and council which must approve and authorize any sublease of French Market properties. It is my opinion that only the city can execute a valid sublease.

Plaintiff's petition seeks to mandamus the French Market Corporation to execute a lease in his favor. Mandamus will not lie against this defendant, for the leasing or subleasing of these properties is not a ministerial act controlled by that corporation, its board, or its officers. Mandamus is not sought against the City of New Orleans.

Of course plaintiff is not entitled to injunctive relief. The leasing and subleasing of the French Market properties are not controlled by Ordinance No. 2500 M.C.S. as amended because of the special ordinances and acts affecting them, and month-to-month leases or subleases for periods of less than a year are not prohibited. There is no basis or authority for injunction to issue in plaintiff's favor against the present occupancy and operation of the Cafe du Monde.

I believe the reasons I have given and those views stated by the Court of Appeal which are not inimical thereto are the correct reasons for dismissal of plaintiff's suit. This court should not reach the issue of whether one bid or another bid for lease, one party or another party seeking a lease, should be accorded favor by the City of

New Orleans. The majority has in obiter dictum made a broad and sweeping discussion of issues not necessary to a determination of the case, and in fact has invaded the province of the city council. My concurrence strongly suggests that the city council act in its own independent fashion for a determination of the propriety of subletting these French Market properties for the benefit of the City of New Orleans.