334 So.2d 241 (1976)
STATE of Louisiana on the relation of Jay CUCCIA
v.
FRENCH MARKET CORPORATION et al.
No. 7527.
Court of Appeal of Louisiana, Fourth Circuit.
May 18, 1976.
Rehearing Denied June 9, 1976.
*243 Tucker, Schonekas & Garrison, Gibson Tucker, Jr., New Orleans, for plaintiff-appellee Jay Cuccia.
August J. LaNasa, New Orleans, for defendants-appellants Ernest L. Masson and Cafe Maison, Inc.
Phillip S. Brooks, City Atty., and Caryl H. Vesy, Asst. City Atty., for defendants-appellants French Market Corp., City Council and City of New Orleans.
Before LEMMON, SCHOTT, and MORIAL, JJ.
SCHOTT, Judge.
This suit concerns the validity of a lease by defendant, French Market Corporation, to defendant, Cafe Maison, Inc., which lease was approved by the Council of the City of New Orleans by Ordinance No. 5592 on December 11, 1974. The City and the Council are joined as defendants.
Between February 27 and March 14, 1974, French Market Corporation advertised in the daily newspapers of New Orleans a solicitation for applications to lease some 2600 square feet of space in the French Market for a coffee and doughnut establishment. The advertisement notified those interested that applications for leasing the space could be obtained from the French Market Corporation. The corporation furnished to those interested in making application a form disclosing that the space could be leased for a 10 year period with an option to renew the lease for an additional 10 years. A minimum price of $9 per square foot, or 6% of gross annual sales, had been set. An application form was supplied and the following was included in the information furnished by the corporation's board:
"The Board would appreciate it if you would fill out this application for space as fully as you can, giving as much detail as possible as to the kind of place you will operate. It would be helpful if you could give some renderings and drawings of your ideas for the space. It should be made clear that the Board is not committed to necessarily leasing the space on the basis of the highest monetary bid. Rather, this will be one of several items considered by the Board whose overriding interest is to find a tenant who will offer unusual decor and profitable operations of the space as well as maintaining the traditions of the French Market. The selection of a name will also be a factor in the Board's decision."
Plaintiff, Jay Cuccia, and defendant, Ernest Masson, submitted competing bids *244 for the space: Cuccia offering 7.5% on all sales up to $500,000, 7.75% on all sales if $500,000 is exceeded up to $550,000 and 8% on all sales if sales exceeded $550,000, subject to a minimum monthly rental of $2700; and Masson offering 7% up to $500,000, 8% on the next $250,000, 9% on the next $250,000, and 10% on sales in excess of $1,000,000, subject to a minimum annual rental of $26,000.
Both bidders are experienced businessmen and presented evidence of solid financial backgrounds. Masson is an acknowledged expert restaurateur with 25 years of experience in the restaurant business, while Cuccia is a successful candy manufacturer and merchant. Cuccia had for some time been a tenant of the French Market Corporation where he operated his business at the time of the events under consideration. Both parties submitted proposals to use the same name if awarded the bid, that is, Cafe Au Lait, but it developed that Cuccia had already reserved this name with the result that Masson adopted another name, Cafe Maison.
These bids were first considered by the Board of Directors of the French Market Corporation on May 9, 1974, when only five of eleven members were present in person and three by proxy. After presentation by Masson and Cuccia of their plans if awarded the lease it was decided to delay action until a special meeting scheduled for May 16 when all members would be urged to attend. At this meeting eight members were present in person and two by proxy. After some additional information was presented to the Board in behalf of the two applicants, the vote was taken with the result that there were five votes cast for each applicant, whereupon the matter was deferred until the next meeting of May 23. At that meeting nine members were present in person and one by proxy. A vote was taken with the result that Masson received seven to Cuccia's three votes. Thereafter, the Council of the City of New Orleans approved this lease.[1] In this suit, filed on October 9, 1975, plaintiff alleged that his bid was higher than Masson's as a practical matter because until gross sales exceeded $1,125,000 annually plaintiff's rent would be higher and it was unrealistic to assume such a sales figure since the previous operator had never exceeded $300,000. Alleging that the Board of the French Market Corporation was required by law to award the bid to plaintiff since his was the high bid, he asserted that the ordinance approving the lease was null and void. He further charged nullity of the lease in that it was for 15 years whereas the bids were solicited for a 10-year lease. He sought a declaratory judgment declaring the lease null and void, a writ of mandamus ordering the City and its Council to grant a lease to him and damages.
The defendants filed exceptions of no cause of action and unauthorized use of summary proceedings which were referred to the merits of the case. In his answer, Masson raised a plea of laches and estoppel based on plaintiff's failure to take prompt legal action while Masson was spending considerable sums to construct the coffee house.
After a trial on the merits the trial judge overruled all exceptions and the plea of laches and estoppel, declared the lease between the French Market Corporation and Cafe Maison null and void, dismissed the alternative writ of mandamus and reserved to the parties their rights with respect to the claim of plaintiff for damages. Plaintiff then filed a motion for a new trial in which he alleged that defendant Masson had publicly expressed his intention to continue with his lease construction irrespective of the judgment which had been rendered against him, and plaintiff sought an injunction against defendant from proceeding with such work. The trial judge denied this motion. Defendants took a suspensive appeal and plaintiff answered the appeal urging his plea for a mandamus requiring *245 the City and its Council to grant him a lease and for an injunction against defendant from proceeding to implement the lease which the trial court had declared null and void.
The principal question before us is the applicability of LSA-R.S. 41:1215 to the lease. Other questions are whether plaintiff is equitably prevented from obtaining the relief he sought because of laches and estoppel, and whether plaintiff has a right to a mandamus against the City and its Council. We will deal with these questions in inverse order.
One of the points on which plaintiff relies with respect to his application for a mandamus is that the French Market Corporation Board, at its May 16 meeting, illegally counted votes by proxy. These two votes were cast by the Board's president for Masson pursuant to written instructions from the absent members, City Councilmen Eddie Sapir and John Lambert. The argument is that these two votes were illegally counted so that Cuccia was in effect awarded the lease by a 5 to 3 vote. We do not accept this reasoning. No members of the Board took this position at the time the tie vote was taken. On the contrary, they were willing to and did in fact take another vote one week later, and in effect reconsidered their previous vote. We know of no authority which would prevent a Board from taking such action. Even so, plaintiff's argument that it became the ministerial duty of the French Market Corporation to enter into a lease with him because of the so-called 5 to 3 vote in his favor at the earlier meeting would not provide a basis for a mandamus against the City compelling it to ratify such a lease. The ordinance authorizing the French Market Corporation to lease its property provided that such leases would be subject to confirmation of the City Council. Assuming the ordinance's validity ultimate decision was with the Council for the granting of the lease. This prerogative cannot be classified as a ministerial duty under LSA-C.C.P. Art. 3863. On the other hand, if, as plaintiff insists, the ordinance itself is illegal and the City was bound by R.S. 41:1215 the City Council was not required to accept plaintiff's bid even if it was the highest bid since the statute specifically provides that the leasor has the right to reject all bids.
As to defendant's argument based on laches and estoppel, the evidence shows that the lease between Masson's company and the French Market Corporation was signed in November, 1974, and the ordinance was finally approved in December. The building permit was taken out by Masson in July, 1975, and Cuccia's suit was filed in October. The application of the doctrine of laches and estoppel depends on the facts of any case. In this case, the trial judge was apparently not persuaded by the facts and neither are we. Even so, the real issue in this case is the validity of a lease of public property. This is not simply a dispute between private citizens. We are cited no authority which would prevent plaintiff, as a taxpayer and a citizen, from bringing this suit against the City and its agent, French Market Corporation, to set aside a lease which he contends is invalid as a matter of law simply because the lessee had already proceeded with work in anticipation of occupying the leased premises. There may be other remedies available to Masson as between him and the City, and Masson always had the privileg of bringing his own declaratory judgment suit to establish the validity of his lease if he desired to protect himself against the eventuality which has come about. To invoke the doctrine of laches and estoppel against plaintiff under these circumstances would be to adopt a judicial statute of limitations against him from attacking a lease as granted in violation of the law. We know of no authority for such a proposition.
We now return to the critical issue of whether this lease was invalid by operation of R.S. 41:1215. We begin by reference to *246 the opinion of the trial judge who held "that the French Market Corporation, pursuant to L.R.S. 41:1215, has a legal obligation to lease the space in question to the highest bidder." That statute provides as follows:
"At the date and hour mentioned in the advertisement for the consideration of bids, the bids shall be publicly opened by the lessor at its office. The lessor shall accept only the highest bid submitted to it by a person or persons who meet all of the conditions of this Part, but the lessor shall have the right to reject all bids." (Emphasis supplied)
Defendants contend that this entire section of the revised statutes has no application to this particular lease because the French Market Corporation does not fall within the definition of a lessor as found in R.S. 41:1211, though conceding that the property involved is owned by the City of New Orleans. They refer to Ordinance No. 4745 M.C.S. adopted in 1971, which granted a franchise and leasehold to the French Market Corporation of properties located in the market, and the fact that the French Market Corporation as a non-profit corporation, organized pursuant to R.S. 12:201 et seq. is a private legal entity. They show that the revenue bonds issued by the French Market Corporation are not subject to the full faith and credit of the City, and that the City does not obligate itself to pay this indebtedness.
We reject this contention. The cited statute includes in its definition of lessor any "other unit or institution, deriving its authority and powers from the sovereignty of the state." That language is broad enough to include the French Market Corporation, which derived its authority from the City to lease the property owned by the City which in turn derives authority and powers from the State.
Defendants argue further that R.S. 41:1211 et seq. applies to lands as opposed to the kind of enclosed building space being leased in this case. They contend that a mere reading of these statutes compels a conclusion that the legislature intended them to apply only to raw lands. We disagree. In Louisiana property is either immovable or movable. Land is immovable and improvements become immovable by destination. They become part of the land. The land does not lose its character because a building is erected thereon. To adopt defendants' reasoning would lead to absurd conclusions. The lease of a parking lot would be controlled by the statute but the lease of a parking building would not. We believe that the only reasonable interpretation of the statute is to include the shell of a building being leased in this case within the meaning of "land" as used in the statute. This conclusion is consistent with the result in Giles v. New Orleans City Park Improvement Ass'n., 306 So.2d 823 (La.App. 4th Cir. 1975) writ refused 310 So.2d 841 (La.1975). The type of space which is the subject of the French Market Corporation's lease in the instant case is the same as that with which the case was concerned. While defendants' argument does not appear to have been raised in Giles we have reached the same result.
It should be observed at this point that the actions of the City and the French Market Corporation, in awarding this lease, are authorized by the Home Rule Charter of the City and the Ordinances enacted pursuant thereto. Section 6-307(4) of the Home Rule Charter provides as follows:
"Contracts for leasing of property belonging to the City for periods of more than one year shall be subject to requirements which may be imposed by ordinance."
In the original Ordinance 4745 M.C.S. referred to above, § 1(G) provided that the French Market Corporation could lease its properties "subject to confirmation of the City Council and in conformance with Ordinance No. 2500 M.C.S. as amended by Ordinance No. 3913 M.C.S." The provisions *247 of these ordinances have been discussed in a number of cases, including Barreca v. City of New Orleans, 256 La. 43, 235 So.2d 87 (1970) and Palermo v. City of New Orleans, 226 So.2d 557 (La.App. 4th Cir. 1969). However, the provisions of these ordinances have been deleted from Section 1(G) by operation of Ordinance No. 5061 M.C.S. adopted in 1973, so that Ordinance No. 4745 M.C.S. as amended now provides as follows:
"The Lessee [French Market Corporation] shall adopt a schedule of fees and rents to be charged for the use of the French Market properties and it shall have complete authority to enter into such subleases on such plans, conditions and durations as the said French Market Corporation deems necessary and in the best interest of the leased property; subject to the conformation of the City Council."
From the foregoing, it is clear and was so noted by the trial judge that the French Market Corporation ostensibly had the power and authority to lease the space in question and the letter of the law was complied with.
However, the quoted provision of the Home Rule Charter must be considered in the light of Art. 14, § 22 of the Louisiana Constitution of 1921, which authorized the City to adopt a Home Rule Charter and which contains the following:
"The City of New Orleans, in addition to the powers expressly conferred upon it by Act 159 of 1912, as amended through the Regular Legislative Session of 1950, shall have the right and authority to adopt and enforce local police, sanitary and similar regulations and to do and perform all of the acts pertaining to its local affairs, property and government, which are necessary or proper in the legitimate exercise of its corporate powers and municipal functions. The City of New Orleans shall, however, not exercise any power or authority which is inconsistent or in conflict with any general law." (Emphasis supplied)
In their interpretation of this Constitutional provision, defendants contend that the leasing of city property is a matter of the City's performing acts pertaining to its property, so that the lease provisions of the Home Rule Charter are consistent with the Constitution, while plaintiff contends that R.S. 41:1215 is a general law so that the subject Charter provisions cannot stand since they are inconsistent, or in conflict with, such law. We have concluded that plaintiff's argument is sound but depends upon the premise that R.S. 41:1215 is a "general law." We need refer only to two cases for guidance, and they indicate that the statute is such a general law.
In Knapp v. Jefferson-Plaquemines Drainage Dist., 224 La. 105, 68 So.2d 774, the Supreme Court discussed at length the distinction between local or special laws as opposed to public or general laws. The Court said:
"Under these rules Acts 235 and 236 of 1936 are public or general acts. They regulate the general interest of a political subdivision of the state, are applicable to all whose lands were sold to the district at tax sale, and operate equally and uniformly upon all brought within the relations and circumstances for which they provide. They do not operate on a certain individual or person within a class, but do affect all persons within that class, that is, those whose property was acquired by the drainage district at tax sale. It cannot be said that these statutes were enacted for the benefit of private persons or property within a certain locality, or for some private advantage or advancement for the benefit of private persons or property within a certain locality."
Applying these principles to the instant case, there can be little doubt that the subject statute regulates the general interest of the State in public lands and is applicable *248 to all such lands. The statute does not confine itself to certain classes of public owners or public lands and was not enacted for the benefit of persons or lands in certain localities.
Similarly, in New Orleans Firefight. Ass'n v. City of New Orleans, 230 So.2d 326 (La.App. 4th Cir. 1970), writ refused 255 La. 557, 232 So.2d 78 (1970), the Court considered whether Acts 55 and 57 of the Extraordinary Session of 1968 were in violation of that part of Art. 14, § 22, of the Constitution of 1921 which is relied upon by defendants in this case, and concluded that these were general laws so that they were specifically excluded from the powers given to the City by the last sentence quoted above from Art. 14, § 22. The Court cited City of Natchitoches v. State, 221 So.2d 534 (La.App. 3rd Cir. 1969) which contains the following:
"Within the meaning of the Louisiana Constitution, Acts 55 and 57 are general laws. A `general' law is one which applies to all persons, places, or things throughout the state or to all persons, places, or things brought within the classification created; as distinguished from a `special' statute, which under its terms operates upon or affects only a portion of the citizens or a fraction of the property within the classification created, and from a `local' law, which operates under its terms only in a particular locality."
From this we have concluded that R.S. 41:1215 is a "general law" within the meaning of Art. 14, Section 22, of the Constitution of 1921.
Defendants have relied mightily on Barreca v. City of New Orleans, supra, which does seem to control the instant case and which recognized the right of the City of New Orleans under then existing ordinances, to wit, Ordinance No. 2500 of 1962 and 2870 of 1964, to lease property in the French Market through the French Market Corporation without the restriction that the lease be made only to the highest bidder. In the first place, it is curious that nowhere in the Barreca case is there a mention of R.S. 41:1215. It may very well be that everyone involved in that case, including counsel for both parties, the judges of this Court who considered the matter at 224 So.2d 138 (La.App. 4th Cir. 1969) and the justices of the Supreme Court, considered the statute to be inapplicable, perhaps following the argument mentioned above that the statute has to do with public lands as opposed to space within a public building. The Barreca case was decided before this Court decided Giles v. New Orleans City Park Improvement Ass'n, supra, which as we have stated, applied the statute to the lease of the same kind of space which is involved here. Furthermore, the Barreca case can be distinguished on its facts. The Supreme Court took note of the fact that the lease to Fernandez of the Coffee Shop was of a going concern, including much goodwill which had been created by the efforts of the Fernandez family over a period of 30 years. In effect, the lease under attack by Barreca was a renewal of of a lease to the party who owned the name and if denied a renewal could move that name with the goodwill which had been developed to another location to the possible disadvantage of the City of New Orleans.
The coffee house in the instant case was to be a brand new operation. It was to begin in a location where the previous operator of the Morning Call had been operating for many years. The Morning Call name and all of its attendant goodwill had already been moved from the location. Precisely what the Court felt was a legitimate concern of the French Market Corporation in the Barreca case with respect to Cafe Du Monde had already occurred in the instant case with reference to the Morning Call. This distinction in facts is more than incidental and tends to support a different result than the one reached in the Barreca case.
*249 Finally, defendants contend that their bid was in fact the higher of the two bids because, if the gross annual revenue exceeds $1,125,000, the rent paid to the City would be greater under the Masson lease than it would be under the Cuccia lease. The trial judge apparently rejected this contention and we agree with him. Evidence of gross sales at both the Morning Call and Cafe Du Monde between 1970 and 1973 was as follows:

 Year Morning Call Cafe
 Du Monde
 1970 $299,000 $423,000
 1971 301,000 533,000
 1972 315,000 535,000
 1973 297,000 616,000

It is apparent from these figures that defendants in the location of the Morning Call would have to increase their sales by almost 400% over the Morning Call's best year before the magic figure of $1,125,000 would be reached. Defendants produced evidence to show that the price of coffee and doughnuts had already gone up 50% since 1972, and we will assume that those prices will continue to rise since inflation seems to be inevitable at least for the next few years. Furthermore, the space available to defendants is greater than that used by the Morning Call. Finally, extensive renovation of the French Market would seem to generate more business than in the past. But even making allowance for these factors it is clear that gross sales of $1,125,000 cannot be anticipated with any reasonable degree of certainty for at least a substantial part of the primary term of the lease. We cannot accept the argument that defendants' bid was higher because it might produce greater revenue if some unattainable figure of gross sales is used as the basis for comparison.
Finally, the lease entered into between the French Market Corporation and Masson, approved by the City Council, is for a primary term of 15 years, while the advertisement and all applications made and discussions had in connection therewith were based on a term of 10 years. This cannot be reconciled with the provisions of R.S. 41:1215.
Accordingly, the judgment appealed from is affirmed and the costs of this appeal are to be paid by defendants.
AFFIRMED.
NOTES
[1] Masson took the lease through the entity Cafe Maison, Inc.