Dear Mr. Borne:
Your request for an Attorney General's Opinion has been assigned to me for research and reply. On behalf of the St. Mary Parish Council, you have asked for our opinion on several matters related to the use of publicly owned water towers.
According to your request, St. Mary Parish has multiple rural areas which are currently not being served by the existing broadband internet service providers in the parish. A local privately-owned company that provides wireless broadband service in the parish desires to provide this service by using existing water towers owned by various local governmental units to deliver its wireless signal.
Your request indicates that all of the public bodies involved recognize the importance of making broadband internet access available to the underserved areas of the parish. Further, you state that it is extremely important for economic development opportunity and for the education of the children of the community to provide what is now an essential utility to the underserved areas. To that end, the parish, municipalities, and waterworks districts are seeking a legal mechanism which could allow this goal to be accomplished.
Your request goes on to state that the water towers in question are owned by either the parish, a municipality or a water district. The water towers in question are currently being used for the purposes for which they were constructed, i.e., water storage and supply. The manner in which these water towers would be utilized by the local privately-owned broadband wireless internet company is that certain broadband transmitting equipment would be attached to the instant water towers, which in turn would allow for the provision of high-speed internet service to prospective private customers in the surrounding areas. These prospective private customers would pay this company for the services rendered. *Page 2 
In lieu of any cash rental payment for the use of the water towers, the local company has proposed an exchange. It would provide free internet services to the respective public bodies which own these water towers in exchange for the use of the space on the tower to place the transmitting equipment as previously described.
Your request provides the following examples of such an arrangement:
 "For example, this local wireless provider would offer as consideration for leasing a spot on a St. Mary Parish water tower, wireless internet services to parish governmental agencies; the same would be true for a waterworks district. As another example, one of the water towers to be utilized is owned by the Town of Baldwin. Baldwin has a newly opened community center that is outside of the area served by the existing broadband internet service providers. Under the exchange explained above, the Town of Baldwin would, in lieu of a cash lease payment for the use of space on its water tower, receive consideration in the form of internet service not only for the unserved Baldwin Community Center but also for other town facilities where it now pays for broadband internet service through existing carriers."
Specifically, you seek our opinion on the following questions:
 1. Can a public body enter into such an agreement under the Public Lease Law with the "fair value" consideration being paid by free wireless internet services to the respective public bodies instead of a cash rental?
 2. AG Opinion 99-207 would appear to suggest that the provisions of the Political Subdivisions Telecommunications and Data Processing Procurement Law (R.S. 38:2234-2237) might be applicable under the instant facts. As noted in the opinion, the language of that Act seems to make it applicable to the expenditure of public funds. Could you provide any guidance as to how this Act could be applied to the instant facts?
 3. AG Opinion 99-207 would appear to suggest that the provisions of the state franchising law might be applicable under the instant facts. Could you provide any guidance as to how this Act could be applied to the instant facts? *Page 3 
 4. Would any such arrangement under the Public Lease Law or the Data Processing Procurement Law violate Article 7, Section 14 of the Louisiana Constitution?
As noted in your opinion request, our office has previously reviewed arrangements that are somewhat similar to the one currently proposed.See Attorney General Opinion Nos. 98-194 and 99-207.
Attorney General Opinion No. 99-207 involved the Greater New Orleans Expressway Commission's decision to install one or more conduits below the roadway of the Causeway Bridge. Each of the proposed conduits was to contain several ducts designed to hold fiber optic communication cables. It was understood that such fiber-optic cables would provide enhanced communications for the densely populated areas on both the north and south shores of Lake Ponchartrain. We were asked to opine as to the proper procedure to carry out the project.
In our response, we stated the following:
 "The statute which most directly addresses the goal you seek to achieve is the Public Lease Law, R.S. 41:1211
and following, which requires a public bid process. There is no authority for the use of a RFP in connection with a solicitation for lessees of public land or facilities. However, specifications for such leases may dictate in detail the limited purposes for which the public property may be utilized and the structure and sequence of compensation.
 The case of State ex rel. Cuccia v. French Market Corporation et al (La.App. 4th Cir. 1976) 334 So.2d 241
makes clear that the Public Lease Law is applicable to structures on public lands (such as the Causeway) as well as to vacant lands. Plantation on the Green, Inc. v. Gamble (La.App. 4th Cir. 1983) 441 So.2d 299
restates the maxim that, "The object of the Public Lease Law is to assure that the most advantageous lease possible will be obtained in an atmosphere of secret, competitive bidding." Gamble also holds that the lessor may structure its bid solicitation and evaluation so that proposals will generate the greatest possible revenue.
 Taken together, these two cases suggest that detailed specifications can be used to clearly delineate what limited public property is available and how it may be utilized by a lessee, and that the GNOEC may structure the lease compensation so that maximum financial returns are realized. You have indicated that *Page 4 
several fibre [sic] optic cable ducts will be available for lease. With this in mind, once bids are received and the high bidder is determined, you may choose to award contracts at the high bid amount to any of the bidders who are willing to accept such terms and prices, so long as the original terms and conditions for the bidding make this clear. We reach this conclusion from the language of R.S. 41:1215A(1) which provides that, "The lessor shall accept only the highest bid submitted to it by a person or persons who meet all the conditions of this Part . . ." Subsequent paragraphs refer to "successful bidders" and "leases", lending support to the idea of multiple lease awards based on the high bid price. Of course, you may also structure your bid terms and conditions so that a fixed number of bids will be accepted (based on the number of ducts available) at the prices offered by each of the highest bidders. The choice of bid structure should be made based on knowledge of how the fibre [sic] optic business operates and on the strategy which will produce the greatest revenue for the GNOEC."
 * * *
Thus, with respect to your first question and in accord with Attorney General Opinion 99-207, we are of the opinion that the lease of public land law must be followed in order to authorize the contemplated use of the publicly owned water towers. Your opinion request makes note of the fact that the water towers in question are owned by various local governmental units, to wit: the parish, a municipality, or a water district. We note that each of these units is governed by different Louisiana Revised Statutes which prescribe the appropriate procedure/process for alienating of publicly owned property.
For example, if the local governmental unit in question is a policejury, La.Rev.Stat. 33:4711 would be applicable. La.Rev.Stat. 33:4711
provides the following:
 Police juries may sell, lease, or exchange with private persons or other political corporations of this state any property owned by the police jury or the parish, when such property is no longer needed for public purposes; and police juries may grant to municipalities within their respective parishes portions of roads, streets, alleys, or other public ways which may lie along and parallel or approximately parallel to any boundary of any municipality in such manner as to be partly in the municipality and partly outside of the municipality; provided such transfer shall have no effect until accepted by the municipality to which it is made.
If the local governmental unit in question is a municipality, La.Rev.Stat. 33:4712 would be applicable. La.Rev.Stat. 33:4712 (A) authorizes a municipality to sell, exchange, or lease property and provides the following: *Page 5 
 § 4712. Sale, exchange, or lease of property by a municipality
 A. A municipality may sell, lease for a term of up to ninety-nine years, exchange, or otherwise dispose of, to or with other political corporations of this state, or private persons, at public or private sale, any property, or portions thereof, including real property, which is, in the opinion of the governing authority, not needed for public purposes.
La.Rev.Stat. 33:4712 (B) and (C) further outline the procedure that must be followed in order for a municipality to sell, exchange, or lease public property. Subsections (B) and (C) provide as follows:
 B. Except as otherwise provided in this Section, before disposition can be made of property under the provisions of this Subpart, an ordinance must be introduced, giving the reasons for the action on the part of the governing authority, and fixing the minimum price and terms of the sale, lease, exchange, or other contract to be made with reference to the property. In instances of exchanges of municipally owned immovable property valued at one hundred thousand dollars or more, the municipality, prior to introduction of the aforementioned ordinance, shall for a minimum of three times in thirty days advertise for and receive other proposals for the exchange of property comparable with the exchange of properties proposed by the municipality; however, exchanges involved in the relocation of public streets, roads, highways, servitudes, rights of way, and/or public franchises shall not be subject to this requirement. Thereafter, notice of the proposed ordinance must be published three times in fifteen days, one week apart, in a newspaper published in the municipality or, if there is no such newspaper, in a newspaper having a general circulation in the municipality, and if there is no newspaper of general circulation in the municipality, by posting in three public and conspicuous places in the municipality.
 C. Any opposition to the proposed ordinance shall be made in writing, filed with the clerk or secretary of the municipality within fifteen days after posting of the above notice or its first publication. If an opposition is filed, the governing authority shall not adopt the ordinance until a hearing has been held. If the ordinance is adopted, it shall not become effective until ten days after its passage, during which time any interested citizen may apply to the *Page 6 
district court having jurisdiction of the municipality for an order restraining the disposition of the property. After the ordinance becomes effective, it cannot be contested for any reason.
Thus, pursuant to La.Rev.Stat. 33:4712, if a municipality intends to lease space, it must first declare that such space is no longer needed for public purposes.[1] Then, an ordinance outlining the details of the proposed lease must be introduced. Notice of the proposed ordinance must also be given in order to give the public an opportunity to be heard on the proposed transaction. Subsection (C) of La.Rev.Stat. 33:4712 further provides that any opposition to the proposed ordinance shall be made in writing and if an opposition is filed, the municipality shall not adopt the ordinance until a hearing has been held. In the event the ordinance is adopted, it shall not become effective until ten (10) days after its passage. During this time, any person may seek a court order enjoining the lease of the property. After the ordinance becomes effective, it cannot be contested for any reason.
Finally, Louisiana Revised Statutes, Title 41, Chapter 10 entitled "Leases of Public Lands," further outlines the lease application and bid process for entities desiring to lease public lands. See La.Rev.Stat.41:1211-1215.1. Under Chapter 10, the term "lessor" includes, among others, the Register of the State Land Office, the commissioner of conservation, and any and all other branches, departments or agencies of the state, or any school district, levee district, drainage district, andmunicipal or parochial subdivision of this state. Id.
Thus, as noted above, in order to effectuate the proposed leases each particular governmental unit must follow the statutorily prescribed procedure applicable to that particular governmental unit. Alternatively, we note that La.Rev.Stat. 33:1321-1337, commonly referred to as the Local Services Law, authorizes local governmental units to cooperate and act jointly on a number of matters, including the procurement of services and the acquisition of property. In our view, we believe the Local Services Law authorizes local governmental units to cooperate and act jointly in effectuating the contemplated leases of publicly owned water towers.
In further answering your first question and with respect to your fourth question, it has consistently been the opinion of this office that in order to comply with the mandates of Article VII, Section 14 of the Louisiana Constitution a public entity *Page 7 
must receive fair market value[2] in exchange for the alienation of public property. It is our opinion that such fair market value may take the form of actual cash rental payments or free wireless internet service. The key concern is that the value received is commensurate with the value of the alienated property.
The following portions of Attorney General Opinion No. 99-207 are relevant to your second and third questions:
 "Although not mentioned in your request, there is another statute which provides for the use of RFPs which may available to you. R.S. 38:2234-2237, the Political Subdivisions Telecommunications and Data Processing Procurement Law, allows the use of either sealed bids or Requests for Proposals in seeking contractors for the lease, rental or purchase of telecommunications or data processing systems, including equipment and related services. While primarily intended for contracts involving the expenditure of public funds there is nothing which would prohibit its use for a project such as you describe, involving both the installation of equipment for your own use as well as facilities which would be used by private parties who would pay the public entity for the right to use public property.
 . . . As a creation of Jefferson and St. Tammany Parishes, the GNOEC may exercise the power to grant nonexclusive franchises, which authority is granted to parishes in R.S. 33:4361. R.S. 33:1324 allows parishes acting jointly to exercise any power which is authorized to any one of the participants under a provision of general or special law. While we have some reservations regarding the appropriateness of a franchise for the mere transport of fibre [sic] optic signals from one end of the Causeway to the other without exacting a requirement of delivering particular services to citizens on one side or the other, there is nothing in the law which would preclude such use of the franchise authority. Multiple franchises may be granted and fee arrangements may take many different forms, as may be determined by GNOEC in advance of the process. While there is no indication in statutory law as to how *Page 8 
a franchise must be awarded, there is also no prohibition on the use of a RFP for soliciting potential franchisees. Indeed, such an open competitive process has significant advantages.
In our view, the Political Subdivisions Telecommunications and Data Processing Procurement Law would not be applicable to the currently proposed contemplated uses of the water towers. La.Rev.Stat. 38:2234-2237 relate to the "acquisition" of equipment, either by lease, rental, or purchase. Our reading of La.Rev.Stat. 38:2234-2237 does not indicate that such provisions are applicable to the lease of publicly owned property. With respect to the ability to grant franchises, La.Rev.Stat. 33:4361
provides the following:
 § 4361. Police jury may grant franchise for use of streets, roads and alleys outside municipalities
 A. Police juries may, subject to any conditions, regulations, and restrictions which they impose, grant franchises or operating system over the public places, roads, streets, and alleys of their respective parishes, not within the limits of any municipality, to any person for:
 (1) The construction, maintenance, and operation of lines of poles and wire for the transmission of electric current for heat, light, or power.
 (2) Laying, maintaining, and operating lines of pipe or mains for supplying gas or water in, over, under or along the public roads, streets, or alleys.
 (3) The construction, maintenance, and operation of sewerage and drain pipes across, along and underneath the roads, alleys, and public places.
 (4) The construction, maintenance, and operation of railways utilizing electric or motive power other than steam, under the conditions hereinafter set forth.
 (5) The construction, maintenance, and operation of television lines and cables whether erected on poles owned or leased from existing public utilities or on poles to be erected, or through cables to be laid underground for receiving, distributing, and transmitting television impulses or signals to residences, commercial establishments, or other customers. Each such franchise shall be awarded to the highest responsible bidder in accordance with the public bid *Page 9 laws of the state. The specifications shall state the area to be served by the franchise, the duration of the franchise, and other terms of the agreement. Each franchise or operating system granted for this purpose is hereby approved and recognized as legal until the franchise termination or operating system termination date or until September 1, 1991, whichever occurs sooner, or such later date as may be specified in a franchise, but no such system shall have exclusive cable rights in any area in which it extends its present operations.
 B. Franchises awarded under the provisions of this Section shall be nonexclusive.
 (Emphasis added).
Although it appears that La.Rev.Stat. 33:4361 grants police juries the specific authority to grant franchises or otherwise permit the use of parish right of ways, or the use of public places, roads, streets, etc., the statute specifically mandates that such franchise be awarded pursuant to the "public bid laws of the state" and be awarded to the highest responsible bidder. When this statute, along with La. Rev. Stats.33:4711-4712 and La. Rev. Stats. 41:1211-1215 are read in para materia, we believe that the conclusion stated above — that in order to effectuate the contemplated uses of publicly owned water towers a public entity must follow the applicable lease of public land law procedure — is supported. Although there are slight variations and differences between each procedure applicable to the different public entities involved, each process contemplates public notice and an opportunity for the public to participate, either by public bid or public comment.
Thus, in summary, we are of the opinion that in order to effectuate the contemplated private uses of publicly owned water towers, the public entity must follow the applicable lease of public land procedure. Further, in order to comply with the mandates of Article VII, Section 14 of the Louisiana Constitution, the public entity must receive fair market value for such use. *Page 10 
We trust this adequately responds to your request. However, if our office can be of further assistance, please do not hesitate to contact us.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL AHORNEY GENERAL
 BY: __________________________ MTCHAEL J. VALLAN Assistant Attorney General
 JDC/MJV/chb
[1] Since the water towers are currently being used for the purposes for which they were constructed, the municipality must take care to sufficiently define the areas of the water towers or portions which are no longer needed for public purposes.
[2] This office has previously opined that fair market value is best determined by public bid, after the minimum bid is established by appraisal. The appraisal is a professional estimate that attempts to determine the fair market value of the property. Fair market value means the price at which property would change hands between a willing buyer and a willing seller when neither party is under any compulsion to buy or sell and both have a reasonable knowledge of relevant facts. Once an appraisal is obtained the fair value of the property is best determined by a public offering which subjects the property to actual market conditions.