528 So.2d 205 (1988)
COLISEUM SQUARE ASSOCIATION, Magazine Street Business Association, Robert M. Allen, Mickey Dillon, Frank Dillon, Paula Krup, Therese Langland, Borge Langland, Melissa Luer, William H. Luer, M.D., Maxine McKinney, W.M. McKinney, Charmaine G. Noel, W.E. Noel, Anna T. Noto, Gerald Noto, Davis Richarme, Norman Robin, Frances M. Whidden, and Maybelle Van H. Whidden
v.
CITY OF NEW ORLEANS.
No. CA-8925.
Court of Appeal of Louisiana, Fourth Circuit.
June 14, 1988.
W.E. Noel and Terry A. McCall, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, for plaintiffs-appellants.
Okla Jones, II, City Atty., and Kathy Lee Torregano, Deputy City Atty., New Orleans, for defendant-appellee.
Noel J. Darce, Stone, Pigman, Walther, Wittmann & Hutchinson, John H. Musser, IV and Henry O'Connor, Jr., Steeg and O'Connor, New Orleans, for intervenor-appellee.
Before BARRY, CIACCIO and PLOTKIN, JJ.
*206 CIACCIO, Judge.
On April 23, 1987, the City Council of New Orleans enacted an ordinance which authorized a 60 year lease of the 2100 block of Chestnut Street to Trinity Church so that it could be incorporated into the campus of the Trinity Episcopal School. The ordinance abandons the public use of the street as a vehicular and pedestrian thoroughfare and provides for an annual rental based upon the appraised value of the street. It further provides for reversion to the City of New Orleans should Trinity School cease to exist or if it otherwise violates the terms of the lease.
On April 27, 1987, petitioners, who are property owners and neighborhood associations in the immediate area, filed suit against the City of New Orleans to enjoin the execution of the lease and the closure of the 2100 block of Chestnut Street.
On June 17, 1987, Trinity Episcopal Church intervened in these proceedings on behalf of the City of New Orleans. The matter was submitted upon verified pleadings, memoranda and supporting affidavits. On July 6, 1987, the trial court rendered judgment against plaintiffs and dismissed their suit, from which judgment plaintiffs filed a devolutive appeal.
We affirm the ruling of the trial court.

BACKGROUND
Trinity Episcopal School is an elementary school of approximately 400 students, with classes from pre-kindergarten through the eighth grade. It has been in operation since 1960. Its campus is located on two squares of ground, both fronting on Jackson Avenue, with the 2100 block of Chestnut Street bisecting the two squares. One square houses the classroom buildings and the other square contains a gymnasium and athletic field.
Students must cross Chestnut Street to go from classrooms to athletic facilities, or vice versa. Chestnut Street is presently used as a public street by approximately 500 vehicles a day, a majority of which are not school connected. Although the City of New Orleans has permitted the temporary closure of the street during school hours, this arrangement has not proven satisfactory because small children use the facilities during non-school hours and must be exposed to the safety hazard of crossing Chestnut Street.
In 1985 the school approached the City with a proposal to buy the subject street so that the street could be closed and incorporated into the school campus. This would facilitate the enlargement of the athletic field and allow the construction of a covered walkway between the school buildings and the gymnasium. It would allow the entire two squares to be secured in some fashion to bar unauthorized persons from the school grounds. Most importantly, it would enhance the safety of the students and remove the threat of a small child being struck by a vehicle while crossing Chestnut Street.
The subject ordinance is the Council's response to the school's proposal.
Appellants urge that the judgment was erroneous because:
1) The City Council did not have legal authority to lease a portion of a public street and remove it from public use.
2) The City Council was arbitrary and capricious when it declared that the street was "no longer needed for public purposes."

AUTHORITY OF CITY COUNCIL TO LEASE PORTION OF CHESTNUT STREET
Appellants urge that the Council does not have the authority under the Home Rule Charter to lease a section of a presently used city street without first making a "legitimate finding" that the street was no longer needed for public purposes. They also urge that a city street may not be leased in the same manner as public buildings.
Appellants argue in brief that the Council's authority to grant this lease is to be found in Section 6-306 of the Home Rule Charter of the City of New Orleans.
Section 6-306 of the Home Rule Charter provides:
*207 Section 6-306. Disposition of Immovable Property.
(1) The Department of Property Management shall from time to time, and not less than once in two years, review the immovable property of the City and make recommendations to the Council and the City Planning Commission for the disposition of such property as is no longer needed.

(2) With the prior approval of the Mayor and the City Planning Commission, the Council may ordain the sale or exchange of immovable property no longer needed. In its resolution of approval, the City Planning Commission may impose restrictions as to future use of such property in order to insure that its use will be in conformity with the plans developed or in process of development by the Commission. The Director, after fixing a minimum price, shall, either individually or through a person appointed by him, cause the property to be sold at public auction to the highest bidder for not less than the minimum price, after advertisement in the official journal three times in two weeks and the net proceeds shall be placed in the Capital Fund. (Emphasis added).
We do not find Sec. 6-306 to be applicable to this case as, by its own language, it regulates only the sale or exchange of immovable property.
The leasing of City property is governed by Sec. 6-307(4), Contracts:
(4) Contracts for the leasing of property belonging to the City for periods of more than one year shall be subject to requirements which may be imposed by ordinance.
The Council has imposed such requirements by Ordinance No. 2500, M.C.S., which became effective on October 19, 1962, and provides:
AN ORDINANCE providing that no lease of property belonging to the City of New Orleans for a period of more than one (1) year shall be entered into unless the same has been awarded to the highest responsible bidder after due advertisement by the Bureau of Purchasing of the Department of Finance.
SECTION 1. That, on and after the effective date of this ordinance, no lease of property belonging to the City of New Orleans for a period of more than one (1) year shall be entered into unless the same has been awarded to the highest responsible bidder, after due advertisement and evaluation of bids received by the Bureau of Purchasing of the Department of Finance.
SECTION 2. That any lease on such property for a term of one (1) year or less, but which grants to the lessee the option of renewal thereof for an additional term, which, together with the primary term, would total more than one (1) year, shall be subject to the provisions of Section 1 hereof.
SECTION 3. That any lease of property belonging to the City entered into in violation hereof shall be invalid and unenforceable against the City.
SECTION 4. That the Council, by a majority vote, may authorize leasing of property in a manner other than prescribed herein. (Emphasis added)
Ordinance 2500 M.C.S. has no language requiring a finding of "no longer needed" nor does that requirement appear in Sec. 6-307(4). Further, Section 4 of the ordinance places no restriction on the City Council's authority to lease City property except to require its approval by a majority vote. Neither the Charter nor the ordinance make any distinction between a public street and other public buildings or property. The ordinance which is the subject of this suit was adopted by a vote of five to one, more than the majority required. Accordingly, we hold that Ordinance No. 11,776, M.C.S., was adopted in apparent full compliance with all procedural requirements of the Home Rule Charter and applicable ordinances.

WAS THE COUNCIL'S ACTION ARBITRARY AND CAPRICIOUS
In order to challenge the disposition of a public street, appellants concede that they *208 must show that the action of the City Council was arbitrary and capricious.
The terms, "arbitrary" and "capricious" were defined in Torrance v. Caddo Parish Police Jury, 119 So.2d 617, 619 (La.App. 2d Cir.1960):
Generally an abuse of discretion results from a conclusion reached capriciously or in an arbitrary manner. "Capriciously" has been defined such as "a conclusion of a commission when the conclusion is announced with no substantial evidence to support it or a conclusion contrary to substantiated competent evidence." 12 C.J.S. verbo Capriciously, p. 1137. The word "arbitrary" implies "a disregard of evidence or of the proper weight thereof." 6 C.J.S. verbo Arbitrary, p. 145. In Caz-Perk Realty, Inc., v. Police Jury of Parish of East Baton Rouge, 1948, 213 La. 935, 35 So.2d 860, the Supreme Court of Louisiana was faced with an appeal involving the same legal issue, and in deciding there was no abuse of discretion by the Police Jury in revoking a dedication and closing a street, recognized that Police Juries have both legislative and executive functions to perform, and are vested with large discretion, with which the judiciary should not meddle except to prevent fraud, oppression or gross abuse of power.
Applying the above principles of law, we address the specification of error that the enactment of the ordinance by the City Council was arbitrary and capricious.
Before rendering judgment below, the trial judge visited the site and gave extensive reasons for judgment. In part he said:

* * * * * *
The proponents, defendants herein, requested the closure of the street for a variety of reasons, including campus security, safety, parking, recreational and educational activities. They further referred to the closure of Chestnut Street during the school year between ten and two thirty by previous action of the City Council.
The opponents, plaintiffs herein, objected to the closure of Chestnut Street on a permanent basis. Various fears about fire and police protection were advanced in addition to the inconvenience the closure will cause the neighborhood residents, the motoring public and the public in general. In effect, the plaintiff-opponents argue that a compelling case has not been made for the closure of an essential public street. Since the 2100 block of Chestnut is presently used as a public street, this fact alone, they contend, negates the City Council's determination that the 2100 block of Chestnut Street is no longer needed for public purposes.
Considering the pros and cons, the City Planning Commission determined and recommended it would be in the public interest to close Chestnut Street, subject to certain reservations and restrictions.
Urban Systems and Associates, at the request of Trinity School, devised a study and traffic plan, with recommendations in the event of the permanent closure of Chestnut Street, including, inter alia, a change in the direction of Coliseum Street to accommodate changes in the traffic pattern and facilitate movement of traffic in the area.
The Street Department's initial opposition to the closure of the 2100 block of Chestnut Street was predicated on the disruption that would occur. The Street Department opposed the permanent closure of the street.
However, by affidavit dated June 26, 1987, Mr. Elmer Darwin, City Traffic Engineer IV, declared "that although the Department of Streets initially recommended against the street closure, the Department deferred to the City Planning Commission to weigh the interest of all parties in light of all the evidence presented."
The City Council Meeting held on April 23, 1987 and its minutes reflect various views with respect to the permanent closure of Chestnut Street by proponents, opponents, property owners, City Officials and interested parties. Additionally, the Coliseum Square Association, a *209 neighborhood group and the Magazine Street Businessmen's Association, parties to the litigation, likewise joined in opposition to the ordinance.
With respect to the first issue herein stated, and considering the substantial investigation of the facts and circumstances attendant to the closure of the property as a public street, the Court is of the opinion that the decision of the City Council was neither arbitrary nor capricious, but reasonably founded upon substantial investigation of facts and circumstances, and plaintiff's opponents allegations notwithstanding is without merit.

* * * * * *
Our review of the procedural history of this ordinance, and, particularly, the affidavit of Councilman James M. Singleton, in whose district the street is located, discloses numerous neighborhood public meetings on December 19, 1985, March 17, 1986, May 19, 1986 and September 23, 1986, held after ample notice, at which time public input was received, pro and con, in connection with the proposed closing of Chestnut Street. On November 19, 1986 Councilman Singleton offered a resolution, adopted by the City Council, which authorized the City Planning Commission to hold a public hearing and to conduct a study with respect to the proposed closure and disposition of Chestnut Street.
The City Planning Commission held a public hearing on January 20, 1987, received testimony from both sides, and adopted a report on March 10, 1987, recommending the leasing of Chestnut Street with numerous protective provisos, rather than its sale.
In accordance with the Planning Commission report, Councilman Singleton introduced the subject ordinance which was adopted after a full public hearing in the City Council chambers.
In support of their complaint that the Council's action was arbitrary and capricious, appellants argue that the present use of the street by the motoring public necessarily leads to the conclusion that the closure of this one block is arbitrary and capricious. They further suggest that the use of the street renders immaterial the findings of the City Planning Commission, the City Council and the trial court that the closure would be in the public interest.
In support of their argument appellants cite two cases, neither of which is persuasive.
Favrot v. Jefferson Parish Council, 470 So.2d 286 (La.App. 5th Cir.1985), involved the closure and sale of a public street to aid a private development. The ordinance was invalidated because the court found that "the street was and still is necessary for access." 470 So.2d at 288.
In Anderson v. Police Jury of East Feliciana Parish, 452 So.2d 730 (La.App. 1st Cir.1984), cert. denied 457 So.2d 13 (La. 1984), the Police Jury abandoned the servitude on a gravel road and, after receiving complaints, rescinded the abandonment only two months later. The court held that the initial action of the Police Jury was without legal effect because the motion to abandon the servitude was not adopted in accordance with the requirements of State law. Further, the closure of the road denied various property owners access to their property. We do not disagree with the rationale of these cases but they are readily distinguishable on their facts.
Unlike the cases relied upon in brief by appellants, the closure of the 2100 block of Chestnut Street does not deprive any property owner of access to his property. It does not create a dead end street. It does not create a traffic safety or fire hazard. It may cause some inconvenience to some parties. Weighing this inconvenience against the benefits that will flow from the closure of the street is the responsibility of the City Council.
We hold that the City Council has the discretionary authority to close an existing public street and to declare that it is no longer needed if, in its considered judgment, the closure of the street is in the public interest. This discretion may not be exercised in an arbitrary and capricious fashion, but the fact that the street is being used by the public is not evidence, in *210 itself, that the closure is arbitrary and capricious.
We find that the proposed closure of Chestnut Street was studied and considered in a thorough, fair and public fashion over an extended period of time with ample opportunity afforded for input and expert testimony by both sides. The Council's action in this case was careful, deliberate, conscientious and reasonable. Appellants were given ample opportunity for input into the deliberative process. Although the final decision may not be to appellants' liking, the record shows that the City Council exercised its legislative prerogative in a responsible and legal fashion. We are constrained to defer to their legislative judgment unless it was arbitrary and capriciousand we find it was not.
The closure of the 2100 block of Chestnut Street and the removal of it from public use by leasing it to Trinity School is a legislative decision involving the collective judgment of the duly elected members of the City Council. In their representative capacities they have the power and the responsibility to weigh the merits of the proposal and to resolve the conflicting interests of the parties in the best interest of the City as a whole. Absent illegality or a finding that their action was arbitrary and capricious, neither of which are present in this case, we may not substitute our judgment for their judgment.
For the foregoing reasons the judgment of the trial court is affirmed. All costs are assessed against appellants.
AFFIRMED.
BARRY, J., dissents with reasons.
BARRY, Judge, dissenting with reasons.
My concern is that the record shows that the 2100 block of Chestnut Street is, and has been, a heavily traversed public street.
More than 500 vehicles a day use the street, an average of 20 per hour or one every three minutesaround the clock. Such usage convinces me that Chestnut Street is certainly needed for public purposes.
I agree with the Department of Streets that to close the street is contrary to the public interest.
Apparently the school and neighbors had previously agreed on a solution which worked for a period of time, i.e., blocking the street during school hours. I would adhere to that scheme which accommodates both sides.