544 So.2d 351 (1989)
COLISEUM SQUARE ASSOCIATION, Magazine Street Business Association, Robert M. Allen, Mickey Dillon, Frank Dillon, Paula Krup, Donald Krup, Norman Robin, Melissa Langland, Borge Langland, Maxine McKinney, W.M. McKinney, Melissa Luer, William H. Luer, M.D., Charmaine G. Noel, Anna T. Noto, Gerald Noto, Frances M. Whidden, and Maybelle Van H. Whidden
v.
CITY OF NEW ORLEANS.[*]
No. 88-C-1837.
Supreme Court of Louisiana.
January 30, 1989.
Dissenting Opinion March 7, 1989.
Rehearings Granted March 9, 1989.
On Rehearing June 19, 1989.
Terry McCall, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, for applicants.
*352 Okla Jones, II, Noel Darce, Henry O'Connor, Jr., John Musser, IV, Kathy Torregano, New Orleans, for respondent.
Dissenting Opinion of Justice Dennis March 7, 1989.
WATSON, Justice.
This case involves the question of whether the City of New Orleans may close a block of a city street which is dedicated to public use and being used by the public, and lease it for sixty years to a private interest.

FACTS
Chestnut Street is a narrow traffic artery which runs from Felicity Street in an unbroken line to Joseph Street. At Joseph Street, it falls into an irregular pattern, but it continues past Audubon Park to Broadway. After 1829, the street was developed uptown from Felicity as part of the grid pattern in the Lower Garden District.
The 2100 block in question comprises 14,312.90 square feet and lies between Josephine Street and Jackson Avenue. It includes a bikeway and it is located in the Lower Garden District, an historic and congested area.
Trinity Church owns the property fronting both sides of the 2100 block of Chestnut Street. After Trinity Elementary School was opened twenty-eight years ago, the public street running through the Church's property became a hazard to crossing students. In 1972, the City authorized closure of the block with gates between 10:00 A.M. and 2:30 P.M. Despite this closure, an average of 505 cars a day use the street. Of these, 220 are school related. None of the Trinity students have been injured by the traffic.
In 1985, Trinity Church broached the idea of purchasing the street block from the City and removing it from public use. The obvious advantages were greater safety and security for the school's students. In addition, a larger play area was planned. At some point, a long term lease was proposed in lieu of a sale. Trinity obtained a market value appraisal of $160,300.
The Department of Streets initially opposed the closure because of the inconvenience to vehicles and pedestrians but ultimately acquiesced in the lease proposal.
The City Planning Commission held hearings to consider the effect of closing the 2100 block of Chestnut Street to allow its incorporation into the campus of Trinity School. According to several home owners and residents, the neighbors have no objection to the block being closed during school hours but object to its permanent closure. Concern was expressed about fire and ambulance access to the historic homes in the area. The Planning Commission ultimately recommended "disposing of" the block by closing it and leasing it to Trinity Church on a long term basis.
Apparently recognizing the inalienability of this public block, the City Council elected to lease it for 60 years but did so after finding that it was no longer needed for a public purpose.
The City Council of New Orleans passed Ordinance Number 11,776, which authorized the City of New Orleans to lease "certain immovable property found to be no longer needed for public purposes", to wit, the 2100 block of Chestnut Street, to Trinity Church for 60 years. The rental of $8,040 a year is to increase by ten percent every five years but can be prepaid at a discounted rate for the full term.
Various interested parties[1] filed suit to enjoin closure of the 2100 block of Chestnut Street. The trial court denied plaintiffs' petition for a permanent injunction, concluding that the City Council was not arbitrary and capricious in finding the property no longer needed for public purposes and that the City had authority to lease the property. The court of appeal *353 affirmed,[2] deciding that the City Council can lease City property under Section 6-307(4)[3] of the Home Rule Charter of the City of New Orleans without finding that the property is no longer needed for public purposes and that the City Council was not arbitrary and capricious in deciding to close and lease the public street. A writ was granted to consider the judgment of the court of appeal.[4]

LAW
A street which is being used as a street is a public thing. LSA-C.C. art. 450.[5] Public things cannot be alienated or appropriated to private use. Mayor of New Orleans v. Metzinger, 3 Mart. (O.S.) 296 (1814); Gulf Oil Corporation v. State Mineral Board, 317 So.2d 576 (La.1975). Since streets belong to the community at large, they cannot be the object of a contract of sale while being used by the public. Daublin v. Mayor of New Orleans, 1 Mart. (O.S.) 185 (1810).
It is a violation of good faith to the public, and to those who acquired property in reference to the plan of a city with a view to the enjoyment of the use thus publicly granted, to afterwards appropriate a street to private uses. City of Baton Rouge v. T.J. Bird, Sheriff, et al, 21 La. Ann. 244 (1869). Also see De Armas, et al. v. Mayor, etc. of New-Orleans, 5 La. 132 (1833), dismissed for lack of jurisdiction 34 U.S. (9 Pet.) 224, 9 L.Ed. 109 (1835). A public street cannot be diverted to an alternate nonpublic use. A municipal corporation has no authority to extinguish public use of public property or divest such property of its public character. Police Jury of the Parish of Plaquemines v. Foulhouze, et al, 30 La.Ann. 64 (1878).
The streets which belong to political subdivisions of the State are owned for the benefit of the public. A political subdivision owns a street subject to public use in its capacity as a public person. Such property, held as a public trust, is inalienable while it is being used by the public. City of New Orleans v. Carrollton Land Co., 131 La. 1092, 60 So. 695 (1913); City of New Orleans v. Louisiana Society, Etc., 229 La. 246, 85 So.2d 503 (1956). Only if public use terminates can a public street be susceptible of private ownership. "The inalienability of all public things, whether belonging to the state or to its political subdivisions, is guaranteed by the Civil Code."[6]
The cases cited in respondent and intervenor's briefs do not support their position. Courts have permitted the sale of a street only when the street was not used by the public. See Caz-Perk Realty v. Police Jury of Baton Rouge, 213 La. 935, 35 So.2d 860 (1948) (overwhelming evidence showed that unnamed street was abandoned); Schernbeck v. City of New Orleans, 154 La. 676, 98 So. 84 (1923) (street had never been opened to traffic); Torrance v. Caddo Parish Police Jury, 119 So.2d 617 (La.App. 2 Cir.1960) (street was so seldom used it was overrun with brush and only passable in dry weather).
The general laws of the State dealing with the lease of public lands are applicable to the City of New Orleans. State, ex rel Cuccia v. French Market Corporation, 334 So.2d 241 (La.App. 4 Cir.1976), writ den. 337 So.2d 189. Various exceptions to the requirements for lease of public lands *354 are not applicable to this situation.[7] Therefore, even if this block were not dedicated to public use, its lease would be limited to 10 years under LSA-R.S. 41:1217.[8]

CONCLUSION
A thing may be in use without being necessary in the sense of being essential or indispensable. The use necessary to preserve the public character and therefore prevent alienation must, of course, be substantial and not merely occasional or infrequent. Passage of 500 cars a day (or 300 discounting those on school business) is obviously substantial. A block which forms part of a continuous thoroughfare used by the public is a public thing and being used for a public purpose. While it is possible for the public to utilize alternative streets, this should not be required to further private interests.
The City of New Orleans and other political subdivisions can sell idle, vacant and surplus lands. However, a block of a street dedicated to public use and being used by the public is not susceptible of alienation or any other diversion to private use.[9]

DECREE
For the foregoing reasons, the judgments of the trial court and the court of appeal are reversed. The closure of the 2100 block of Chestnut Street as no longer needed for public purposes is not within the legal authority of the City Council of the City of New Orleans. The 2100 block of Chestnut Street is not susceptible of alienation or lease because it is dedicated to public use and is being used by the public. Moreover, with certain nonpertinent exceptions, a lease of public property cannot exceed a term of ten years.
Therefore, Ordinance Number 11,776 of the City of New Orleans, adopted April 2, 1987, is null and void and has no legal effect. The plaintiffs' injunction is granted.
REVERSED AND RENDERED.
CALOGERO, LEMMON and DENNIS, JJ., dissent and assign reasons.
CALOGERO, Justice, dissenting.
I have serious reservations about the majority's determination that "a block of a street dedicated to public use and being used by the public is not susceptible of alienation...."[1] Streets are public things which may belong to a political subdivision of the state. La.Civ.Code Art. 450. Public things are only inalienable when that alienation is mandated by constitution or by statute. Yiannopoulas, Louisiana Civil Law Treatise, Property, Vol. 2, § 32, p. 87, n. 36. "Public things are only inalienable as long as it is determined that they are subject to, or needed for, public use." Id. at § 34, p. 95.
*355 Furthermore, I am of the view that once a municipality, acting in a non-arbitrary and non-capricious manner, determines that certain public property, including streets, should no longer be used for a street, i.e., that it is no longer needed for public use, then that property becomes a public thing owned by the municipality in its private capacity and is subject to lease or alienation.[2]
My research has uncovered no clear answer to this problem. Whereas minerals and water bottoms are constitutionally declared inalienable (Art. IX, §§ 3, 4 (1974)), there exist no similar constitutional provision regarding public streets and roadways. Absent a discernible and clear prohibition, constitutional or statutory, I opt in favor of permitting the municipality to lease to Trinity School the street block at issue, since it seems clear to me that the City Council has not acted in an arbitrary or capricious manner. As the court of appeal so ably stated:
"The closure of the 2100 block of Chestnut Street and the removal of it from public use by leasing it to Trinity School is a legislative decision involving the collective judgment of the duly elected members of the City Council. In their representive capacities they have the power and the responsibility to weigh the merits of the proposal and to resolve the conflicting interests of the parties in the best interest of the City as a whole. Absent illegality or a finding that their action was arbitrary and capricious, neither of which are present in this case, we may not substitute our judgment for their judgment."
For these reasons, I respectfully dissent.
LEMMON, Justice, dissenting.
Immovable property owned by a municipality and used as a street is a public thing, but is not inherently insusceptible of private ownership. However, public things owned by a municipality which are needed for public use are insusceptible of private ownership as long as they are so needed. Thus, a street is insusceptible of private ownership as long as it is needed for use as a street, but becomes susceptible of private ownership after public use of the street terminates. See generally A. Yiannopoulos, 2 Louisiana Civil Law TreatiseProperty §§ 33 and 34 (2d ed. 1980).
The focus in the present case should not be on whether the street was used as a public thing, but on whether it was needed as a public thing. The City made a legislative determination that it was not so needed, and the critical issue is whether that determination was arbitrary. If not, the street became susceptible of private ownership after the public use was terminated and could be leased on a long-term basis.
DENNIS, Justice, dissenting.
I respectfully dissent.
The court in today's decision takes a Nineteenth century view of the relationship between state and municipal governments. In doing so, the majority relegates New Orleans and other home rule governments to the class of subordinate legislative creatures and sets itself up as a superlegislature to judge the wisdom or desirability of local government policy. The court's opinion is in serious conflict with the universally recognized intention of the 1974 Louisiana Constitution and with this court's concept of the proper scope of judicial review of legislative action.
Before the present case, this court recognized that Article VI of the 1974 Louisiana Constitution strikes a different balance of power between the state legislature and home rule governments than that which existed under previous constitutions. Article VI section 5 authorizes a home rule government to assume any power or function necessary, requisite or proper for the management of its affairs not denied by *356 general law or inconsistent with the constitution. Consequently, a home rule charter government possesses in affairs of local concern, powers which within its jurisdiction are as broad as that of the state, except when limited by the constitution, or denied by general law. VII Records of the Louisiana Constitutional Convention of 1973, pp. 1415-16; Francis v. Morial, 455 So.2d 1168 (La.1984); Murchinson, Developments in the Law, 1979-80, Local Gov't Law 483 (La.1981); Kean, Local Gov't and Home Rule, 21 Loy.L.Rev. 63 (La.1975).
There is no general law which prohibits a home rule city from closing a public street and leasing or selling its public property formerly dedicated to that purpose. La.C. C. art. 450, the sole article cited in the majority opinion in support of its decision, simply states in pertinent part that "[p]ublic things that may belong to political subdivisions of the state are such as streets and public squares." Conspicuously absent from this and other codal articles is a general prohibition against government entities disposing of public property. Rather, those things which are inalienable and forever insusceptible of private ownership are delineated in the constitution. See, La. Const. art. IX, §§ 3, 4, (1974) prohibiting the alienation of water bottoms and mineral rights, respectively. Neither the Civil Code nor the constitution, therefore, denies the City of New Orleans the power to close public streets and to lease or sell public property formerly dedicated to that purpose. In fact, the legislature has specifically authorized cities of all kinds to sell, lease, exchange, or otherwise dispose of any property which is, in the opinion of the governing authority, not needed for public purposes. La.R.S. 33:4712 (emphasis added.). In sum, not only is the city empowered by the constitution to direct the management of its streets without interference, but it is also expressly permitted this prerogative by statute.
Ironically, as if to underscore the weakness of its position, the majority opinion relies almost exclusively upon cases decided under state constitutions in effect prior to the 1974 Louisiana Constitution. These decisions are entirely inapposite to an interpretation of a modern home rule government's quasi-sovereign power which cannot be denied except by general law or constitutional provisions.
Because the City's authority to exercise any power or function necessary for the administration of its local affairs (including the leasing of public property for private use) is deeply rooted in our constitution, statutes and jurisprudence, this Court has but one possibly legitimate role in these circumstances: to determine whether the City exercised its authority in an arbitrary or capricious manner. For example, this court has held that it is within the scope of the police power delegated to a local government to determine whether a street is no longer needed for public purposes, and that a court will not interfere with the exercise of this discretionary power unless it has been abused by acting arbitrarily:
... when the Legislature delegated to the police juries and municipal corporations of this state full power and authority over the revocation and dedication of streets ... it is necessarily within the scope of the police power thus delegated to these political bodies by the legislature to look into and determine whether the street is abandoned or is no longer needed for public purposes and it is the well settled jurisprudence that courts will not interfere with the functions of ... public bodies in the exercise of this discretion vested in them unless such bodies abuse this power by acting capriciously or arbitrarily.
Caz-Perk Realty v. Police Jury, 207 La. 796, 22 So.2d 121, 124 (1945). Furthermore, this court has consistently held that, when an ordinance of even a small village is challenged, the judiciary will not inquire into the motives, policy or wisdom of the municipal legislative body, but will confine their review to a determination of the applicability, legality or constitutionality of laws. Kel-Kan Inv. Corp. v. Village of Greenwood, 428 So.2d 401 (La.1983) and authorities cited therein.
Unless the City's decision regarding the 2100 block of Chestnut Street, an exercise of its duly constituted authority, is shown *357 to be arbitrary and capricious, it should be upheld. Arbitrariness has not been demonstrated. To the contrary, the record reflects that the City's determination was made only after thorough and complete consideration of the relevant evidence. The majority makes no genuine attempt to show that the legislative action in question was taken without due process or that it was arbitrary, capricious or unreasonable. Instead the majority merely substitutes its own judgment for the City's legislative choices by deciding that the street in question should not be closed or alienated because in those justices' opinion the street is in "substantial use."

ON REHEARING
MARCUS, Justice.[*]
We granted a rehearing to consider whether the New Orleans City Council (Council) has the legal authority to close the 2100 block of Chestnut Street and lease it to Trinity Episcopal Church (Trinity) and, if so, whether the decision of the Council, finding the property was no longer needed for public purposes, was arbitrary and capricious.
Trinity Church, a Louisiana non-profit corporation, is the owner of all of the property fronting both sides of the 2100 block of Chestnut Street between Jackson Avenue and Josephine Street in the City of New Orleans.[1] The church operates Trinity School which has an enrollment of approximately four hundred students in pre-kindergarten through eighth grade. The campus is divided by Chestnut Street with the academic buildings located on one side and the playground, athletic field and combination gymnasium and classroom structure located on the other side. Since 1972, the Council has allowed the school to close the 2100 block of Chestnut Street to traffic from 10:00 A.M. to 2:30 P.M. on school days because children are frequently required to cross the street to go back and forth for various classes and activities.
Beginning in late 1985, Trinity sought to purchase the 2100 block of Chestnut Street from the City of New Orleans. The purpose of the proposed purchase and permanent closure of the street was to fulfill three objectives of a long-range plan for the schoolimprove the safety and security of the students, provide a covered walkway between the gymnasium and the school buildings and enlarge the present playing field to make it one of near-regulation size. If the street were acquired, Trinity would move the pre-school playground presently located on the Jackson Avenue side of the campus to an area near the playing field and construct a new circular driveway and parking entrance on Jackson Avenue. A traffic impact analysis was performed for Trinity by a private consultant to determine the effects of the proposed closure on neighborhood traffic. Several neighborhood meetings were held with residents of the neighborhood to explain the proposed plan.
In November of 1986, the Council passed a resolution asking the City Planning Commission to hold a public hearing on the proposed purchase. A public hearing was held on January 20, 1987, at which both proponents and opponents of the proposed purchase were given the opportunity to express their views. Based upon the testimony presented at the hearing and written comments from opponents and proponents, as well as input from the Planning Advisory Committee and the traffic study, the City Planning Commission was of the opinion that the benefits provided by the Trinity plan outweighed any adverse impact on the area. However, instead of the proposed sale, the Commission recommended that the 2100 block of Chestnut Street be leased to Trinity under certain conditions. On April 2, 1987, the Council proposed an ordinance to authorize the City to enter *358 into a contract of lease with Trinity for a term of sixty years.[2] At a meeting on April 23, 1987, the Council heard the recommendations of the City Planning Commission, as well as the comments of the traffic consultant for Trinity and comments from various opponents and proponents of the ordinance. After the hearing, the Council adopted Ordinance No. 11,776 authorizing the lease by a vote of five to one.
On April 27, 1987, this suit was filed by the Coliseum Square Association and Magazine Street Business Association, non-profit corporations, and several residents of the neighborhood against the City of New Orleans, seeking to declare the ordinance null and void and to enjoin the closure of the street.[3] Trinity intervened in the suit and joined with the city as a party defendant in resisting the claims of the plaintiffs. Plaintiffs contended that the City of New Orleans had no authority to enter into a lease of a public street to a private concern and that even if it did, the lease of a presently-used public street was arbitrary and capricious. They further contended that the permanent closing of the street would complicate and increase traffic flow on existing streets, impede the access of emergency vehicles to the neighborhood, cause delays and inconvenience to the residents and change the historic fabric of the district. After a hearing, based upon the record, the trial judge denied plaintiffs' petition for a permanent injunction finding that the Council had sufficient authority to lease the property and its decision to do so was neither arbitrary nor capricious.[4] The court of appeal affirmed, finding authority to lease the property under the city's home rule charter and further finding that the Council was not arbitrary and capricious in deciding to close and lease the street.[5] Upon plaintiffs' application, we granted certiorari to review the correctness of that decision.[6] On original hearing, finding that the closure of the 2100 block of Chestnut Street as no longer needed for public purposes was not within the legal authority of the Council, we declared the ordinance null and void and granted plaintiffs' injunction. We granted a rehearing to reconsider whether the Council has the legal authority to close the street and, if so, whether the decision of the Council, finding the property was no longer needed for public purposes, was arbitrary and capricious.
La. Const. art. VI, § 5(E) provides that a home rule charter "may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution." There is no general law which prohibits a home rule entity from closing a public street and alienating it for a private purpose.[7] Neither is there a constitutional *359 prohibition.[8] Neither the Civil Code nor the Constitution, therefore, prohibits the city from alienating a public street; in fact, specific authority to sell, lease, exchange or otherwise dispose of public property is authorized by both the home rule charter of New Orleans and the legislative statutes.
Under § 3-112(5)(d) of the home rule charter, the Council is empowered to adopt proposed ordinances alienating any immovable property and granting any servitude, franchise or privilege. Specifically, § 6-307(4) authorizes the leasing of public property and provides:
Contracts for the leasing of property belonging to the City for periods of more than one year shall be subject to requirements which may be imposed by ordinance.[[9]]
Moreover, La.R.S. 33:4712(A) grants authority to municipalities to sell or lease public property. It provides:
A municipality may sell, lease for a term of up to ninety-nine years, exchange, or otherwise dispose of, to or with other political corporations of this state, or private persons, at public or private sale, any property, or portions thereof, including real property, which is, in the opinion of the governing authority, not needed for public purposes.[[10]] [Emphasis added.]
The authority of local governmental bodies to alienate public streets has been recognized by our courts. See Caz-Perk Realty, Inc. v. Police Jury of Parish of East Baton Rouge, 207 La. 796, 22 So.2d 121 (1945); Schernbeck v. City of New Orleans, 154 La. 676, 98 So. 84 (1923); Miller v. Calcasieu Parish Police Jury, 441 So.2d 306 (La.App. 3d Cir.1983), writ denied, 444 So.2d 121 (1984); Torrance v. Caddo Parish Police Jury, 119 So.2d 617 (La.App. 2d Cir.1960). In fact, the City of New Orleans has exercised that authority to lease and sell public streets for many years in an effort to aid economic expansion and development in the city.[11] Hence, we conclude that in the absence of a constitutional prohibition and in view of the express authority granted by the home rule charter and La.R.S. 33:4712(A), the Council possessed the legal authority to enter into a lease of the 2100 block of Chestnut Street with Trinity.
*360 Having determined that the Council has the legal authority to lease the 2100 block of Chestnut Street to Trinity, we must next determine whether the exercise of that authority was proper in the instant case.
In reviewing the decisions of public bodies (the City Council in the instant case), the courts will not interfere with the functions of these bodies in the exercise of the discretion vested in them unless such bodies abuse this power by acting capriciously or arbitrarily. Caz-Perk Realty, Inc. v. Police Jury of Parish of East Baton Rouge, supra. In Caz-Perk, this court stated:
It is our opinion, therefore, that when the Legislature delegated to the police juries and municipal corporations of this state full power and authority over the revocation of dedicated streets, roads, and alleyways that have been abandoned or are no longer needed for public purposes, it is necessarily within the scope of the police power thus delegated to these political bodies by the Legislature to look into and determine whether the street is an abandoned street or is no longer needed for public purposes and it is the well-settled jurisprudence that courts will not interfere with the functions of police juries or other public bodies in the exercise of the discretion vested in them unless such bodies abuse this power by acting capriciously or arbitrarily.
22 So.2d at 124. Generally, "capriciously" has been defined as a conclusion of a commission when the conclusion is announced with no substantial evidence to support it, or a conclusion contrary to substantiated competent evidence. The word "arbitrary" implies a disregard of evidence or of the proper weight thereof. Favrot v. Jefferson Parish Council, 470 So.2d 286 (La. App. 5th Cir.1985); Torrance v. Caddo Parish Police Jury, supra.
Plaintiffs contend that the Council's action in closing the street was arbitrary and capricious because the 2100 block of Chestnut Street is presently being used by pedestrian and vehicular traffic during weekdays (except when it is temporarily closed from 10:00 A.M. to 2:30 P.M.) and on weekends. Since the block is presently in use, they argue that the street is "needed"; hence, the decision to close the street "as no longer needed for public purposes" is arbitrary and capricious.
The mere fact that the street is being used by the public does not mean that it is "needed" for public purposes. "Use" and "need" are relative terms and it is the duty of the Council, after reviewing and weighing the evidence presented, to determine whether discontinuance of the present use and any inconvenience resulting therefrom would outweigh whatever benefits would flow from the closure of the street.
The 2100 block of Chestnut Street is presently a one-way street running in the uptown direction and is closed to public use from 10:00 A.M. until 2:30 P.M. five days a week. The traffic impact analysis performed by Urban Systems, Inc. analyzed the effect that the permanent closure of the 2100 block of Chestnut Street would have upon traffic volume and flow in the vicinity of the school. This report established that an average of 505 vehicles used the block each day and out of those vehicles, 220 or about 44% were directly school-related. (This does not include church-related or after school activity-related traffic.) The report further determined that the vehicles that would be re-routed as a result of the closure could be accommodated on existing, adjacent streets without significant negative impacts or reduction in service. The proposed circular driveway on Jackson Avenue for drop-off and pick-up would remove Trinity-related traffic from the narrow one-way streets and also alleviate any potential traffic congestion on Jackson Avenue. The report recommended steps that could be taken to mitigate the impact, including reversing the one-way flow of traffic on Coliseum (the next street running parallel to Chestnut). This change would create a pair of one-way streets (Camp Street going downtown and Coliseum Street going uptown) that would work to the benefit of the neighborhood traffic *361 flow. The relocation of the bike route from Chestnut Street as suggested by the study would simplify the route and improve safety. Implementation of the plan would result in a net increase of about eight parking spaces. Although plaintiffs contended that the closure would damage the historical character of the district by changing the "grid pattern" of the streets, it was the conclusion of the study that the reversal of Coliseum to flow in the uptown direction would preserve the internal grid pattern. The report was reviewed by both the City Planning Commission and the Council in reaching the determination to lease the street.[12]
Trinity presently owns all of the property on both sides of the 2100 block of Chestnut Street. Many past and present Trinity students live in the neighborhood. The permanent closure of the block will not create a dead-end street, will not deprive any property owners of access to their property, and should not impede the access of emergency vehicles to the neighborhood residents.
Proponents contended that some of the benefits that would result from the permanent closure include increased security of the campus and safety of Trinity students as well as various other persons and groups who use the campus facilities on nights and weekends at all times of the year. Trinity has proposed a landscaping plan for the project that will increase the aesthetic quality of the neighborhood. The school's students have had a positive economic impact on the city and fulfillment of the school's long-term goals which include the use of the 2100 block of Chestnut will help the facility maintain its quality educational program. In fact, some residents of the neighborhood with no relationship to Trinity testified that the school's plans for the campus would enhance the value of the neighborhood in addition to increasing the quality of education at this inner city institution.
After weighing the substantial evidence presented to it, the Council determined that the present use made of the 2100 block of Chestnut Street could be served by alternative means and the benefits resulting from the permanent closure of the block outweighed whatever inconvenience the closure would have on the neighborhood in particular and the public in general. Based upon our review of the record, we are unable to say that the Council was arbitrary and capricious in its determination that the 2100 block of Chestnut Street is no longer needed for public purposes and it can be leased to Trinity under the terms and provisions agreed upon by the parties to the lease.
In sum, we find that the Council had the legal authority to close the 2100 block of Chestnut Street and lease it to Trinity and that the decision of the Council that the property was no longer needed for public purposes was neither arbitrary nor capricious. Accordingly, we should not substitute our judgment for that of the Council and will not. Hence, we reverse our judgment on original hearing and affirm the judgments of the courts below.

DECREE
For the reasons assigned, the judgment of the court of appeal is affirmed. All costs are assessed against plaintiffs.
DIXON, C.J., respectfully dissents.
WATSON, J., dissents and assigns reasons.
WATSON, Justice, dissents, adhering to the view that the City cannot lease public property being used by the public to a private concern under the pretext that the property is no longer *362 needed for public purposes.[1]
NOTES
[*] Editor's Note: This opinion was originally published at 538 So.2d 222. It is published here as corrected.
[1] The Coliseum Square Association and the Magazine Street Business Association have withdrawn as plaintiffs in this lawsuit. The remaining plaintiffs are Robert M. Allen, Mickey Dillon, Frank Dillon, Paula Krup, Donald Krup, Norman Robin, Davis Richarme, Therese Langland, W.E. Noel, Borge Langland, Maxine McKinney, W.M. McKinney, Melissa Luer, William H. Luer, M.D., Charmaine G. Noel, Anna T. Noto, Gerald Noto, Frances M. Whidden, and Maybelle Van H. Whidden.
[2] Coliseum Square Ass'n v. City of New Orleans, 528 So.2d 205 (La.App. 4 Cir.1988).
[3] Section 6-307(4) provides:

"Contracts for the leasing of property belonging to the City for periods of more than one year shall be subject to requirements which may be imposed by ordinance."
[4] 532 So.2d 138 (La.1988).
[5] LSA-C.C. art. 450 provides:

"Public things are owned by the state or its political subdivisions in their capacity as public persons.
"Public things that belong to the state are such as running waters, the waters and bottoms of natural navigable water bodies, the territorial sea, and the seashore.
"Public things that may belong to political subdivisions of the state are such as streets and public squares."
[6] Yiannopoulos, Louisiana Civil Law Treatise, Property, Vol. 2, Section 34, p. 95.
[7] Certain property in the City of New Orleans is exempt under LSA-R.S. 41:1215.2. Trinity Church is not a public benefit corporation as described in LSA-R.S. 41:1212(G). The block in question cannot be described as an historic landmark building under LSA-R.S. 41:1212(H). It is not owned by a school district and therefore exempted under LSA-R.S. 41:1217(D). The contract of lease does not involve boating facilities which are exempted under LSA-R.S. 41:1223.
[8] LSA-R.S. 41:1217 provides in pertinent part:

"A. All leases executed under the provisions of this Part shall be for a period not exceeding ten years and shall provide for consideration to be paid as a cash rental of not less than one dollar per acre, which shall be payable in cash annually and in advance, or if the land is leased for agricultural purposes of planting, growing, cultivating, and harvesting any agricultural crop, the consideration shall be so paid in cash or on a share basis at the option of the lessor...."
[9] It is true that the voters could eject from office those who sell off (or lease for many years, thus effectively alienating) public things, but the remedy would be hollow, the square or street being gone forever.
[1] The New Orleans Home Rule Charter, Section 6-307(4), provides for "the leasing of property belonging to the City for periods of more than one year." La.R.S. 48:701 provides for the revocation of the dedication of a public street which is no longer needed for public purposes, and La.R.S. 33:4712(A) provides that a city may sell, lease, exchange, or otherwise dispose of "any property ... which is, in the opinion of the governing authority, not needed for public purposes."
[2] "When the public owns a thing dedicated to public use, the termination of the public use has distinct consequences. On principle, the thing ceases to be public and becomes a private thing of the state or its political subdivisions. Accordingly, it is alienable and susceptible of acquisitive prescription, though not against the state." (Emphasis provided). Yiannopoulas, Louisiana Civil Law Treatise, Property, § 71, p. 210.
[*] Pike Hall, Jr., associate justice ad hoc, sitting for Associate Justice Harry T. Lemmon.
[1] Chestnut Street runs from Felicity Street to Audubon Park, about 45 blocks. The 2100 block is the fourth block from its beginning at Felicity. It currently operates as a one-way street in the uptown direction from Felicity to Jackson Avenue and across Jackson Avenue it operates as a two-way street. It is also a designated bike route.
[2] The lease provided for an initial rental of $8,040 a year with a rental increase of ten percent every five years. Should Trinity cease to function as a private school in the area, the street would revert to the city. No permanent, enclosed buildings could be placed upon the land. The lease further provided, among other conditions, that Trinity would be responsible for the signage, the street closure apparatus and striping.
[3] The Coliseum Square Association and the Magazine Street Business Association withdrew as plaintiffs in this suit on December 6, 1988.
[4] The record consisted of the pleadings, memoranda, transcripts from the hearings before the City Planning Commission and the Council and affidavits in support of the Council's action submitted by Edwin J. Mazoue, Jr., Acting Director of the Division of Real Property Records of the Department of Property Management of the city, Robert W. Becker, Executive Director of the City Planning Commission, Steven M. Rittvo, President of Urban Systems, Inc., the firm that performed the traffic study for Trinity, and James M. Singleton, Councilman of District B, the district in which the property is located, as well as an affidavit by Elmer Darwin, city traffic engineer with the Traffic Engineering Division of the Streets Department, indicating that while the department was opposed to the closure, it deferred to the City Planning Commission to weigh the interests of all parties in light of all the evidence presented.

The trial judge indicated that he also conducted an on-site inspection of the premises.
[5] 528 So.2d 205 (La.App. 4th Cir.1988).
[6] 532 So.2d 138 (La.1988).
[7] La.Civ.Code art. 450 relied upon in original hearing in pertinent part provides that "[p]ublic things that may belong to political subdivisions of the state are such as streets and public squares." While the article classifies a street as a public thing, it does not prohibit its alienation.
[8] Those things which are inalienable and insusceptible of private ownership are water bottoms and mineral rights. See La. Const. art. IX, §§ 3, 4 (1974).
[9] Plaintiffs argued that even if the Council had the legal authority, the public bid laws should apply to this lease. La.R.S. 41:1211, et seq. In Arnold v. Board of Levee Commissioners, 366 So.2d 1321 (La.1978), this court held that a public body (the levee board) was not required to comply with the general law requiring public bids because it had special statutory authority to dispose of its property under such terms and conditions and by such methods as the board deemed proper under La.R.S. 38:1235.2. In the instant case, the Council has independent statutory authority to lease public streets granted by the home rule charter and under La.R.S. 33:4712. Hence, the statutes requiring public bids for the lease of property do not apply, and plaintiffs' contention is without merit.
[10] The statute was first enacted in 1946. La. Acts 1946, No. 314. Prior to 1983, the City of New Orleans was expressly excepted from the applicability of the act. The exception was removed by La.Acts 1982, No. 473. Prior to the enactment of La.R.S. 33:4712, the authority of the governing bodies to revoke dedicated streets, roads and alleyways that had been abandoned or no longer needed for public purposes was provided in La.Acts 1910, No. 151 and Acts 1938, No. 382.

Other statutory authority to dispose of immovable property including streets, roads, and alleys upon a determination that the property is no longer needed for public use is provided pursuant to La.R.S. 48:701, et seq., but the Parish of Orleans is expressly excepted from the statute.
[11] Trinity is not the only school to which the city has sold or leased a public street. In its brief in support of its application for rehearing, the city listed those ordinances which had disposed of public streets in favor of other schools including Tulane University, LSU Medical Center, Isidore Newman School and Brother Martin High School. The list also included disposition by ordinance of former public streets in favor of hospitals, the United States Post Office on Carrollton Avenue, New Orleans Public Service, Inc., the Rivergate and the Superdome as well as various private developments such as Canal Place and Jackson Brewery.
[12] The Department of Streets took the position that although the traffic pattern of the adjacent streets could be arranged to handle the displaced traffic, there would still remain a certain amount of inconvenience to the movement of vehicles and pedestrians. Although it recommended against street closure, it deferred to the City Planning Commission to weigh the interests of all parties in light of the evidence presented.
[1] See 538 So.2d 222 (La.1989).