Dear Mr. Fanning:
On behalf of the Jefferson Parish School Board (the ASchool Board ),you requested the opinion of this office concerning the legality of theSchool Board contracting with Educational Websites of America, L.L.C.(AEd Web )[1] to market and sell advertising on the Jefferson ParishPublic School System's (the ASystem ) web sites, as well as solicitingadvertising at the System's baseball and football stadiums.
 You advised that the System has a web site that was created in-house.Each of the eighty-two (82) schools in the System has a web site. Theweb sites provide information on the schools generally and specificallyrelating to the current school year. The sites are accessible by thegeneral public as well as the students and their parents or guardians.
 The Ed Web proposal calls for Ed Web to create a AFrontpage for theSystem's web site and for each of the school web sites. The company willsolicit advertising for placement on each Frontpage, with the System andthe company sharing the revenue from the advertising. Ed Web shallexclusively own the Frontpages and has the sole and exclusive right tosell advertising on all of the System's web sites and web pages to anyadvertiser it chooses[2]. The sale of the advertising is not subjectto System approval.
 Things are divided into common, public, and private; corporeals andincorporeals; and movables and immovables. C.C. art. 448. Common thingsmay not be owned by anyone, such as the air and the high seas. C.C.art. 449. Public things are owned by the state or its politicalsubdivisions in their capacity as public persons, such as streets andpublic squares. C.C. art. 450. Public things and common things aresubject to public use in accordance with applicable laws andregulations. Everyone has the right to fish in the rivers and the rightto land on the seashore provided that he does not cause injury to theproperty of adjoining owners. C.C. art. 452. Private things are owned byindividuals, other private persons, and by the state or its politicalsubdivisions in their capacity as private persons. C.C. art. 453.Owners of private things may freely dispose of them under modificationsestablished by law. C.C. art. 454. Corporeals are things that have abody, whether animate or inanimate, and can be felt or touched.Incorporeals are things that have no body, but are comprehended by theunderstanding, such as the right of intellectual property. C.C.art. 461.
 Based upon the foregoing, it is the opinion of this office that theSchool Board's web is a incorporeal movable owned by the School Board inits capacity as a private person and thus the School Board may dispose ofit in accordance with law.
 Our research has not disclosed any specific statute pertaining to theability of a public body to lease its property, corporeal orincorporeal, for advertising purposes. R.S. 17:87.6 does authorizepublic school boards to sell, lease, or otherwise dispose of, at public orprivate sale, for cash or on terms of credit, any personal property whichis not used and, in the judgment of the school board, is not needed inthe operation of any school or schools within its jurisdiction.
 Thus, in order to lease the web page or the stadia walls, the web pageor the stadia could not be in use by the School Board nor any of theschools and, in the judgment of the School Board, the web pages and thestadia would not be needed in the operation of any school or schoolswithin its jurisdiction. As the web pages and the stadia are in use, wequestion whether the lease of the web page would comply with R.S. 17:87.6,however, see the discussion in Coliseum Square Association v. City of NewOrleans, 544 So.2d 351 (La. 1989), wherein the Court found that theCity's determination that a street which was used daily by vehicles andpedestrians was no longer needed for a public purpose and could be leasedto a private school. Any determination by the School Board could not bearbitrary or capricious. Coliseum Square, id.
 Of course, any transaction must comply with La. Const. Art. 7, Sec.14, which provides in pertinent part as follows:
 (A). Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. . .
 La. Const. Art. VII, Sec. 14(B) contains a list of exceptions to theprohibition found in Sec. 14(A), none of which appear to be pertinent tothis situation. La. Const. Art. 7, Sec. 14(C) does provides forcooperative endeavors, as follows:
 Paragraph (C) of Section 14 authorizes public entities to engage incooperative endeavors for a public purpose with other governmentalagencies, public or private corporations, or individuals. However,Paragraph (C) supplements the prohibition against donations in Section14(A). It does not create an exemption or exception from the generalconstitutional prohibition. The Louisiana Supreme Court has ruled thatall cooperative endeavors authorized by Section 14(C), must also meet thegeneral standard for the non-gratuitous alienation of public funds orproperty established by Section 14(A). See City of Port Allen v. La. RiskManagement, et al., 439 So.2d 399 (La. 1983).
 Despite the authorization of cooperative endeavors, Section 14(A) is,nevertheless, violated whenever the State seeks to give up something ofvalue in the absence of a legal obligation to do so. In other words, onlyif the use of public funds or property is authorized by a valid legalobligation, will it be considered a constitutionally sanctionedcooperative endeavor. The requirement of a legal obligation to expendpublic funds or use public property is the threshold, but not the onlypredicate for the constitutionality of the expenditure or use. Theexpenditure or use must also be for a public purpose and create a publicbenefit proportionate to its cost. Op.Atty.Gen. Nos. 02-0113, 92-722, and90-651.
 We do caution the School Board that if they allow advertising on theirweb sites and the stadia walls, they may have created a public forum forpurposes of the First Amendment to the U.S. Constitution. See discussionsin United States v. American Library Association, 2003 WL 21433656,___ S.Ct. ___ (June 23, 2003); Cornelius v. NAACP Legal Defense andEducational Fund, Inc., 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567(1985); Good News Club v. Milford Central School, 533 U.S. 98,121 S.Ct. 2093, 150 L.Ed.2d 151(2001); Arkansas Educational Television Commission v. Forbes,523 U.S. 666, 118 S.Ct. 1633, 140 L.Ed.2d 875 (1998);Diloreto v. Downey Unified School District Board of Education, 196 F.3d 958(Aug. 4, 1999).
 There are also restrictions under Louisiana law. La. Const. Art. XI,Sec. 4 prohibits public funds from being used to urge any elector to votefor or against any candidate or proposition. R.S. 43:111.1 prohibits theuse of public funds for advertisements containing the names of publicofficials.
 It also might be advisable to refrain from allowing access by thestudents to any of the internet advertisements while on school property.This office addressed the issue of radio broadcasts to be broadcastedduring the Aoff periods of the school day in Op.Atty.Gen. No. 93-694.This office concluded:
 Although the broadcasting does not take place during the "instructional" time, it still involuntarily subjects children to a public forum. The children who are listening to the music, commercials and advertisements is decided exclusively by Star Broadcasting, Inc. . . . Therefore, the broadcasts can contain information that may not be educationally sound for the students. The law states that BESE is to have no control over the business affairs of a parish or city school board, however, BESE does have the duty to "supervise and control the public elementary and secondary schools" It is the opinion of this office that this supervisory duty is not limited to instructional time. Additionally, the use of the school building for radio broadcasting outside of regular school hours does not constitute an "academic purpose" as required by R.S. 17:81B. Several Attorney General opinions have dealt with the issue of whether a particular use of a school building is academically or educationally sound for the students.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ________________________________ MARTHA S. HESS Assistant Attorney General
/MSH
DATE RELEASED: July 2, 2003
MARTHA S. HESS, ASSISTANT ATTORNEY GENERAL
[1] This office was furnished with a copy of the proposed contract and a revision thereto; however, you advised that you were not asking for an opinion on any of the terms of the contract, and accordingly, this opinion does not address any of the terms of the proposed contract.
[2] The revised proposed contract provides that the Company shall not sell advertising to any person or company engaged in the business of selling alcohol or tobacco products and no advertising shall contain any text or images suggestive of pornography, obscenity or nudity or any other sexual content. No other restrictions were stated in the draft.